UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Seneca Nation, *a federally recognized Indian tribe*,

           Plaintiff,

 v.

Andrew Cuomo, *in his official capacity as*
 *Governor of New York*, et al.,

           Defendants.

**Report and Recommendation**

18-CV-429V

---

## I.   INTRODUCTION

On October 5, 1954, the Seneca Nation of Indians (the "Seneca Nation") granted the State of New York a permanent easement over a portion of its Cattaraugus Reservation, in exchange for $75,500. (*See* Appendix 1.)[1] The state wanted the easement (the "Thruway Easement") to develop part of the New York State Thruway. Since 1954, the Seneca Nation has challenged the validity of the Thruway Easement at least twice in federal court. In 1993—the "1993 Case" mentioned in footnote 1 below—the Seneca Nation sued the state and other defendants under a variety of claims. The 1993 Case is much better known for the Seneca Nation's claims to ownership of Grand Island and other islands in the Niagara River. *See generally Seneca Nation of Indians v. New York*, 206 F. Supp. 2d 448 (W.D.N.Y. 2002), *aff'd*, 382 F.3d 245 (2d Cir. 2004). Within the litigated claims, though, was a claim that the Thruway Easement was invalid and that the state was trespassing. District Judge Richard Arcara eventually adopted a recommendation from Magistrate Judge Carol Heckman and dismissed the Thruway Easement claim. The claim was dismissed because the State of New York

---

[1] This appendix constituted Docket Nos. 195-14 through 18 in *Seneca Nation of Indians v. New York*, Case No. 93-CV-688 (the "1993 Case") (W.D.N.Y.). Since the 1993 Case preceded the development of the federal judiciary's CM/ECF system, the Court retrieved the archived physical file and attached this appendix for the reader's convenience.

owned the Thruway Easement and was an indispensable party to any litigation about it, but could not be sued because of Eleventh Amendment sovereign immunity. The Court of Appeals for the Second Circuit affirmed. *See generally Seneca Nation of Indians v. New York*, 383 F.3d 45 (2d Cir. 2004) (per curiam).

Now the Seneca Nation has brought suit again over the Thruway Easement. To avoid the problem from last time about sovereign immunity, the Seneca Nation in the new complaint assumes that the Thruway Easement is void *ab initio*; from there, the Seneca Nation asserts that the State of New York does not need to appear concerning an easement that does not exist. The Seneca Nation seeks declaratory and injunctive relief that would require individual state officials and the New York State Thruway Authority to obtain a valid easement. The Seneca Nation does not specify who the owner of any new easement would be. Defendants have filed a motion to dismiss the complaint (Dkt. No. 16), arguing in essence that the new complaint is too clever by half: The request to obtain a new easement presupposes the nullity of the one that has been acted on for 64 years; and the owner of that 64-year-old easement would need a chance to weigh in before any court declared that easement's demise.

District Judge Lawrence Vilardo has referred this case to this Court under 28 U.S.C. § 636(b). (Dkt. No. 17.) The Court held oral argument on October 17, 2018. For the reasons below, the Court respectfully recommends granting defendants' motion.

## II.    BACKGROUND

The Court has to take the unusual step of beginning a background section with an important clarification about factual assumptions. Defendants filed the pending motion under Rule 12 of the Federal Rules of Civil Procedure, including Rule 12(b)(6). Plaintiffs opposing a Rule 12(b)(6) motion are entitled to the presumption, for the limited purpose of adjudicating the motion, that all

facts in their complaints are true. The Court will follow that convention here for genuine factual assertions in the Seneca Nation's complaint. The complaint, however, contains numerous legal conclusions couched as factual assertions. Here are some examples:

- "the Nation purported to convey a permanent easement" (Dkt. No. 1 at 4);

- "The purported easement was never legally valid or effective" (*Id.*);

- "The State officials who negotiated and obtained the easement did not comply with the statutes or applicable regulations" (*Id.* at 5);

- "On October 5, 1954, the Nation signed a purported easement agreement" (*Id.* at 9);

- "At the time of the Nation's purported consent to the easement" (*Id.*);

- "Since at least 1993, the Nation has openly denied any validity for the purported easement, which was void *ab initio* under federal law" (*Id.* at 10); and

- "Defendants Cuomo, Schneiderman, and Karas have authority separately and collectively to obtain valid easements for the State and have failed to obtain any valid easement for the portion of the Nation's Reservation where the Thruway is located." (*Id.*)

Any assertion about "purported" easements or about the validity of the Thruway Easement calls for a legal conclusion and requires no deference under Rule 12. *See, e.g., Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) ("We review the district court's dismissal of a complaint under Fed.R.Civ.P. 12(b)(6) de novo, taking as true the factual allegations of the complaint, but giving no effect to legal conclusions couched as factual allegations."); *compare Hall v. Family YMCA of Greater Aug.*, No. 1:17-CV-00337-JMC, 2017 WL 3158776, at *5 n.4 (D.S.C. July 25, 2017) (existence of an employee handbook can be a factual assertion) *with Farshchi v. Wells Fargo Bank, N.A.*, No. CV H-15-1692, 2016 WL 2858903, at *4 n.19 (S.D. Tex. May 13, 2016) ("The statement that 'Plaintiff is a beneficiary of a valid enforceable contract' is a legal conclusion that the court should not consider for purposes of a 12(b)(6) motion to dismiss.") (citations omitted). To

3

provide background information that avoids legal conclusions, the Court will begin with this paragraph from the Second Circuit opinion concerning the Thruway Easement:

> In 1946 the New York Department of Public Works (DPW) began negotiations with the Senecas concerning an easement for a state highway through their Cattaraugus Reservation. In 1950 New York State created the New York Thruway Authority (Thruway). In 1954, agreement was reached and an indenture was entered into between "THE SENECA NATION OF INDIANS" and "THE PEOPLE OF THE STATE OF NEW YORK, acting by and through the New York State Thruway Authority," by which the Senecas granted a "PERMANENT EASEMENT for Thruway purposes" over the lands of the reservation. The Seneca Nation was paid $75,000, and individual Indian landowners were separately compensated.

*Seneca Nation*, 383 F.3d at 47. These facts dovetail with the documents that the Court has attached as Appendix 1, which is only a small portion of the record from the 1993 Case but includes a copy of the indenture that the Second Circuit cited and that the Seneca Nation attacks as invalid. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") (internal quotation marks and citation omitted).

### A. The 1993 Case

On August 25, 1993, the Seneca Nation filed suit in this District against the State of New York, the New York State Thruway Authority, and other defendants. (1993 Case, Dkt. No. 1.) The original complaint contained two counts. The first count—which concerned ownership of certain land including Grand Island, New York—is not relevant to any issues presented today, but the second count merits closer attention. For the sake of the analysis below and for convenience to the reader, Count 2 of the original complaint from the 1993 Case is reprinted verbatim and in its entirety:

4

Count 2—Easement Claim

21. The allegations set forth in ¶¶ 1 through 7 and 12 through 15 above are incorporated by reference herein.

22. The lands at issue in this claim, as described in ¶ 4(b) above, were set aside for the Seneca Nation by the United States by the Treaty of September 15,1797, 7 Stat. 601, and the later 1802 Treaty of Buffalo Creek, 7 Stat. 70, and are currently part of the Cattaraugus Reservation of the Seneca Nation.

23. Between 1797 and 1874, the Seneca Nation entered into a series of leases with white settlers in the Village of Salamanca, New York. In 1875, Congress ratified the leases, providing the necessary approval under the Nonintercourse Act, and granted the Nation the power to lease lands in the village without further congressional approval. 18 Stat. 330 (1875).

24. In 1950, in the Seneca Leasing Act, Congress extended the Nation's power to lease without congressional approval to tribal land lying beyond the village. 64 Stat. 442 (1950).

25. In 1961, Congress amended the 1950 Seneca Leasing Act to include the power to grant rights-of-way and easements. 75 Stat. 499 (1961).

26. On October 5, 1954, defendant New York Thruway Authority, on behalf of the State of New York, entered into an agreement with the Nation to transfer to the defendants a permanent easement over 300 acres of land for the construction of the New York Thruway through the Cattaraugus Reservation for a one-time payment of $75,500.

27. In 1948 Congress granted the power to approve rights-of-way over Indian lands to the Secretary of the Interior at 25 U.S.C. §323:

§323. Rights-of-way for all purposes across any Indian lands

The Secretary of the Interior be, and he is empowered to grant rights-of-way for all purposes, subject to such conditions as he may prescribe, over and across any lands now or hereafter held in trust by the United States for individual Indians or Indian tribes, communities, bands, or nations, or any lands now or hereafter owned, subject to restrictions against alienation, by individual Indians or Indian tribes, communities, bands, for nations, including the lands belonging to the Pueblo Indians in New Mexico, and any other lands heretofore or hereafter acquired or set aside for the use and benefit of the Indians.

28. The permanent easement obtained by the defendants was not approved by the Secretary of the Interior as required under 25 U.S.C. §323, and the Nation had not been granted power by Congress to enter into rights-of-way or easements without congressional approval at the time the easement was obtained.

> 29. The interest of the Seneca Nation was taken in violation of the Nonintercourse Act and 25 U.S.C. §323. As such, the transaction is void, illegal and of no force and effect. The defendants State of New York and New York Thruway Authority are trespassers upon the land in violation of the law.

(*Id.* at 8–9.) When the Seneca Nation amended the complaint on October 27, 1993 to convert the first count into a class action, Count 2 remained identical down to the paragraph numbering. (1993 Case, Dkt. No. 12 at 8–9.) In the second amended complaint filed on October 15, 1997, Count 2 had different paragraph numbering but otherwise was copied verbatim. (1993 Case, Dkt. No. 112, at 10–11.)

Over the course of several years of proceedings, one issue that arose in the 1993 Case was sovereign immunity. The Court here will not repeat the extensive arguments and citations from the archived file, but the central question was simple. Did the State of New York need to be a party in a lawsuit concerning land title and easements? If so then did the Eleventh Amendment prohibit the Seneca Nation from suing the State of New York in federal court? For reasons that will become apparent later, these paragraphs—a small sample of the extensive argumentation on this point—from one of the archived defense briefs caught the Court's attention:

> Examined more closely, it becomes apparent that plaintiffs' argument against the application of *Coeur d'Alene* [*Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997)] is internally inconsistent. First, plaintiffs brought suit against the individual state defendants to enjoin alleged ongoing violations of federal law (and, admittedly, "in order to bring its claims within the doctrine of *Ex parte Young* [209 U.S. 123 (1908)]." The ongoing violations alleged are not the individual state defendants' physical possession of the land (*i.e.*, plaintiff "does not seek to quiet title against the state officials" (Seneca Op. at 10)); instead, plaintiffs seek to extinguish their continued enforcement of laws and continued jurisdictional authority over the land. Now, however, plaintiffs claim that what they seek is mere possession, and not [an] end to New York's jurisdiction and sovereign power. If the former point is true, then *Coeur d'Alene* applies, because significant issues of sovereignty are at stake. If the latter point is true, then *Ex parte Young* cannot apply, because there would be no cognizable ongoing violation of federal law by the individual state defendants. Either way, plaintiffs' claims fail.

* * * *

> The State of New York falls squarely into the definition of a necessary and indispensable party under Federal Rule of Civil Procedure 19. If it is not a party to the lawsuit, the State of New York's ability to protect its sovereignty interests will, as a practical matter, be eliminated in its absence. *See* Fed. R. Civ. P. 19(a)(2). Furthermore, in the State's absence, the non-State defendants may be found liable for payment of massive money damages—a claim that may be in the billions of dollars—for the fair rental value of the land at issue from 1815 until the present day. To saddle the truly innocent non-State landowners with such a burden violates the letter and spirit of Rule 19.

(1993 Case, Dkt. No. 134, at 12–13.) The Seneca Nation's attempts to avoid dismissal through sovereign immunity received further attention:

> Plaintiffs allege that the United States ceded the land at issue to their predecessors in the Treaty of Canandaigua. The type of interest granted by the Treaty of Canandaigua is not—and cannot be—merely possessory. Instead, this type of interest contains the entire bundle of rights associated with the land: possession, title, sovereignty, and everything in between.
>
> Here, plaintiffs have attempted to convince the Court that the possessory interest can somehow be carved out of the bundle of rights that plaintiffs claim under the Treaty of Canandaigua, and therefore that the State is not a necessary or indispensable party. This, however, cannot be so. The only remedy that can be awarded from a claim such as plaintiffs' is the entire set of rights, including sovereignty over the lands at issue—which makes the State a necessary party as its interests will be affected by the outcome of this case.

(1993 Case, Dkt. No. 135, at 4–5.) Magistrate Judge Carol Heckman eventually decided in a Report and Recommendation that the Thruway Easement belonged to the State of New York, not the Thruway Authority or any other person or entity:

> As to the proof on this issue, the State has submitted the affirmation of Henry A. De Cotis, Assistant Attorney General in Charge of the Real Property Bureau for the New York State Department of Law. Mr. De Cotis has more than 25 years of experience handling the legal aspects of Thruway right-of-way acquisitions and supervising administrative records of acquisitions made since the creation of the Thruway Authority. According to Mr. De Cotis, most Thruway rights-of-way were acquired by the New York State Department of Transportation (or its predecessor the Department of Public Works) pursuant to Section 358 of the Public Authorities Law and Section 347(2) of the Highway Law. Mr. De Cotis affirms that title to real property interests acquired for Thruway purposes, including the easement through the Cattaraugus Reservation, is held by the State "for and in behalf of the people" (Item 217, ¶ 6).

The State has also submitted a letter dated October 7, 1954, from Julius Kaagan, Administrative Supervisor for then-Attorney General Nathaniel L. Goldstein, to Hon. B. D. Tallamy, Chairman of the Thruway Authority, stating as follows:

> The Seneca Nation of Indians as grantor has conveyed to the People of the State of New York acting by and through the New York State Thruway Authority as grantee a permanent easement across the Cattaraugus Indian Reservation.

(*Id.* at 20). As this contemporaneous documentation suggests, the view of the Attorney General's Office at the time of the transaction was that "the People"—*i.e.*, the State—would hold title to the easement through the Thruway Authority.

This evidence, considered in light of the express language of the easement agreement and the statutory and decisional law pertaining to the relationship between the State of New York and the New York State Thruway Authority, leads to the conclusion that the State—and not the Thruway Authority independently—holds title to the easement. While it is true that in some cases the Thruway Authority may be capable of holding title itself, in this case it does not because the Seneca Nation clearly and unambiguously conveyed the easement to the State.

(1993 Case, Dkt. No. 228, at 20–21.)[2] From there, Magistrate Judge Heckman concluded that Count 2 ought to be dismissed because the State of New York was an indispensable party but protected by sovereign immunity:[3]

> Giving the Rule 19(b) factors the consideration due in light of the State's Eleventh Amendment immunity, I find that equity and good conscience require dismissal of the Seneca Nation's suit to invalidate the Thruway easement because the State is an indispensable party to the suit. First, a judgment favorable to the tribe rendered in the State's absence would undeniably prejudice the State's governmental interest in securing and protecting property rights acquired on behalf of the people of the state for Thruway purposes. Second, no protective provisions in the judgment, or other measures, have been suggested that would enable the court to shape the relief so as to lessen the prejudice. Third, a judgment rendered in favor of the Seneca Nation adjudicating the right of title to the Thruway easement would be meaningless in the absence of the State as a party to the adjudication. Fourth, even

---

[2] For the reader's convenience, the full text of the Report and Recommendation is attached to this writing as Appendix 2.

[3] The Court notes briefly that the land claims in the 1993 Case were not subject to sovereign immunity because the United States chose to intervene, for those claims only and not the easement claim, on the Seneca Nation's behalf. (*Id.* at 4.) *See also Seneca Nation of Indians v. New York*, 178 F.3d 95, 97 (2d Cir. 1999) (per curiam).

though the tribe may not have an adequate remedy if the Thruway easement claim is dismissed for nonjoinder, this factor is outweighed by the "paramount importance" to be accorded to the State's immunity from suit.

(*Id.* at 23.) District Judge Richard Arcara adopted Magistrate Judge Heckman's recommendations regarding dismissal of Count 2 on Rule 19(b) and sovereign-immunity grounds. (1993 Case, Dkt. No. 244.)[4] The Second Circuit affirmed. *Seneca Nation of Indians v. New York*, 383 F.3d 45 (2d Cir. 2004) (per curiam). Specifically, the Second Circuit decided that "the Magistrate Judge was correct in concluding that the State of New York, rather than the Thruway Authority, owned the Cattaraugus easement, and that, as a result, the State had an interest relating to the subject of the action and was so situated that the disposition of the action in its absence may as a practical matter have impaired or impeded its ability to protect that interest." *Id.* at 48 (internal quotation and editorial marks and citation omitted). The Second Circuit then found no abuse of discretion with the analysis of sovereign immunity, "particularly in light of the significance sovereign immunity plays in weighing the Rule 19(b) factors." *Id.* at 49 (citation omitted).

### B. This Litigation

On April 11, 2018, the Seneca Nation filed the complaint in this case. (Dkt. No. 1.) In the complaint, the Seneca Nation attacks the Thruway easement as a "purported" easement that "was not signed by a representative of the United States, and contained no reference to the United States or to the requirement for federal approval of the conveyance. No federal official was present when the agreement was signed." (*Id.* at 9.) The Seneca Nation then connects the validity of the easement to the need for relief from what it views as ongoing violations of its rights:

> Since at least 1993, the Nation has openly denied any validity for the purported easement, which was void *ab initio* under federal law. For example, the

---

[4] The Court could not find the original copy of Docket No. 244 in the archived file. From the discussion in the ensuing Second Circuit opinion, the Court infers that Judge Arcara declined to adopt portions of the Report and Recommendation that are not relevant here.

> Nation has asked the Thruway Authority to collect tolls for the Nation and to remit them to the Nation for the use of its lands by motorists on the Thruway. The Thruway Authority has refused to do so and continues to assert the validity of the easement notwithstanding the failure to comply with federal law.

(*Id.* at 10.) To try to avoid the problem with sovereign immunity from the 1993 Case, the Seneca Nation does not name the State of New York as a defendant and denies that any relief requested requires the State's presence. "Defendants Cuomo, Schneiderman,[5] and Karas have authority separately and collectively to obtain valid easements for the State and have failed to obtain any valid easement for the portion of the Nation's Reservation where the Thruway is located." (*Id.*) The Seneca Nation also tries to vest authority for easements in the Thruway Authority by asserting that the "Thruway Authority also has the power to obtain a valid easement for the lands in question. It participated in the closing of title for the invalid easement in 1954." (*Id.* at 11.)

The complaint culminates in three claims. In the first claim, the Seneca Nation seeks "an injunction to enforce federal law protecting its Cattaraugus Reservation from continuing unauthorized use for the purpose of operating a toll road without a valid easement. The Nation does not seek to eject anyone from the purported easement, but seeks only to prevent further violation of its rights to a valid easement for such usage. The continued operation of the Thruway without a valid easement by the Defendants (except for the Comptroller) violates the federal treaties and laws establishing the Reservation and protecting it against alienation." (*Id.*) Alternatively, the Seneca Nation seeks "an order enjoining the Defendants (except for the Comptroller) from collecting tolls for the portion of the Nation's Reservation on which the Thruway is situated without

---

[5] The New York Attorney General at the timing of the filing of the complaint. As of January 1, 2019, Letitia James will be New York Attorney General. Per Rule 25(d), the Clerk of the Court is directed to amend the caption to replace "Eric T. Schneiderman, *in his official capacity as New York State Attorney General*" with "Letitia James, *in her official capacity as New York State Attorney General.*" The substitution will take effect automatically as of January 1, 2019.

first obtaining a valid easement." (*Id.* at 12.)  In the second claim, the Seneca Nation seeks "an injunction requiring that the Comptroller of New York segregate and hold in escrow any future toll monies collected on the Thruway that are fairly attributable to the portion of the Thruway operated in violation of the Nation's federally protected property rights until the other Defendants obtain a valid easement." (*Id.* at 13.)  In the third claim, the Seneca Nation "seeks and is entitled to a declaration that Defendants (other than the Comptroller) will continue to violate federal law by not obtaining a valid easement for the portion of the Thruway over the Nation's Reservation lands and that some of the funds being collected by the Thruway and being deposited with the Comptroller on a continuing basis are derived from this violation of federal law." (*Id.*)

Defendants filed the pending motion on June 5, 2018.  Defendants argue primarily that the 1993 Case addressed every substantive contention that the Seneca Nation is trying to litigate now. "The Second Circuit's ruling in the prior suit bars the instant suit due to the doctrines of collateral estoppel and *res judicata*.  The Plaintiff has had a full opportunity to argue its points regarding the legitimacy of the Thruway easement and proper remedies when it brought suit twenty three years ago, and lost." (Dkt. No. 16-1 at 6.)  More specifically,

> the prior action was dismissed by the Second Circuit, in which the Court upheld the principle that the State of New York had Eleventh Amendment immunity from suit by the Plaintiff, among others.  *Seneca Nation of Indians*, 383 F.3d 45.  The Court further held that the State of New York was the actual owner of the easement in question and was, therefore, a necessary and indispensable party to any action regarding the easement.  This is a decision on the merits of the sovereign immunity and indispensable party issues.  Clearly, the same Plaintiff was involved.  In the earlier case, the Seneca Nation was a Plaintiff.  The earlier suit also concerned the validity of the Thruway easement and the relief Plaintiff could obtain as a result of that issue, so the claims asserted were raised in the prior action.

(*Id.*; *see also* Dkt. No. 23 at 3 ("As to the issue of dismissal on the merits, Plaintiff is correct that dismissal for failure to join a necessary party is not a judgment on the merits, but it is preclusive on that one issue.").)  Technically, the Seneca Nation's request for declaratory relief did not appear in

11

the 1993 Case, but defendants assert that it could have, meaning that *res judicata* will apply to that claim as well. Alternatively, even if *res judicata* somehow did not apply, defendants argue that the absence of *res judicata* would mean only that the Court would start over applying Eleventh Amendment sovereign immunity. (Dkt. No. 16-1 at 8.) The narrow exception to sovereign immunity provided by *Ex parte Young* does not apply here, according to defendants, because this case is both an action for money damages and an action to quiet title, not an action to prohibit rogue public officials from violating federal law. (*Id.* at 13–14.) Finally, defendants note that the Seneca Nation has brought this case approximately 64 years after the alleged injury and decades after the Thruway Easement in question became an established part of the Interstate Highway System. (*Id.* at 19.) The long passage of time prompts defendants to raise laches as an additional ground for dismissal.

The Seneca Nation opposes the pending motion in all respects. According to the Seneca Nation, "[d]efendants' claim preclusion argument fails because the previous Thruway litigation did not result in an adjudication on the merits, but rather a dismissal for failure to join a party under Federal Rule of Civil Procedure 19." (Dkt. No. 22 at 7.) "Moreover, except for the Thruway Authority, the prior litigation did not involve the same parties. State officers sued in their official capacities are not the same party as the state for *res judicata* purposes when Eleventh Amendment considerations resulted in dismissal of the earlier case." (*Id.* at 8.) In a similar way, the Seneca Nation argues against any assertion of "claim splitting" or collateral estoppel. "The Nation previously litigated, and this Court and the Second Circuit previously decided, only the State's Eleventh Amendment immunity and whether the Nation's claim should be dismissed under Rule 19." (*Id.* at 10.) The Seneca Nation then reiterates that the Court can grant relief here under *Ex parte Young*. "*Ex parte Young* permits suits, such as this one, against state officers in their official

capacities for prospective relief to enjoin continuing violations of federal law. As detailed in the complaint, the defendants' continuing actions operating the Thruway over the Nation's lands are in derogation of the Nation's federally protected reservation." (*Id.* at 10.) Finally, the Seneca Nation argues that defendants bear the burden of establishing laches, and that "laches does not apply to actions to enforce federal restraints on alienation such as those at issue here." (*Id.* at 20.)

At oral argument, the Court tried to clarify the interplay between the Seneca Nation's references in the complaint to a "purported" easement; the invocation of *Ex parte Young*; and the need, if any, for the State of New York to appear:

> MAGISTRATE JUDGE SCOTT: But if you've got—but if there is an easement that's valid, what's been violated?
>
> MR. TYSSE: If there's an easement that's valid, Your Honor, I think that sort of begs the question in this case because we've pleaded and—in an allegation that I think has taken us through at this stage of the pleadings. We pleaded that *there is no valid easement*, that there is an ongoing violation of federal law, that there's no right *for the state* to use that land. Now, at the motion to dismiss stage that's enough.
>
> * * * *
>
> MR. SLEIGHT: About the—counsel's claim that this is not a case about the validity of the easement, this is a case that's all about the validity of this easement.
>
> If you don't rule or if the Court doesn't find that as a matter of law that easement is not valid, there's nothing else to talk about really. I mean, that's what they're challenging. It's not the ongoing operation of the Thruway.
>
> If that's what they were challenging they would be seeking an ejectment and they're not. They're seeking to force the State—asking this Court to force the State to come back to the negotiating table to extract more money for the Thruway right-of-way.

(Dkt. No. 28 at 13, 25 (emphasis added).)

## III. DISCUSSION

### C. Motions to Dismiss Under Rule 12(b)(6)

Defendants technically have moved under Rules 12(b)(1), (6), and (7), but a major part of their argument is that all of the substantive issues raised in this case were addressed in the 1993 Case. The potential for overlap of issues between the two cases, regardless of the exact framing of the claims, implicates collateral estoppel. "Res judicata and collateral estoppel are affirmative defenses that must be pleaded." *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 350 (1971); *accord Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999). Defendants filed the pending motion instead of answering the complaint, as was their right, and affirmative defenses can be raised in Rule 12 motions under the right circumstances. "Dismissal under Fed.R.Civ.P. 12(b)(6) is appropriate when a defendant raises claim preclusion . . . and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000) (citations omitted); *accord, e.g., Cayuga Indian Nation of New York v. Seneca Cty., New York*, 260 F. Supp. 3d 290, 302 (W.D.N.Y. 2017) (citations omitted); *Chmurynski v. Robbins*, No. 3:10CV1303 JBA, 2011 WL 2619078, at *2 (D. Conn. July 1, 2011) (citations omitted).

### D. Collateral Estoppel and Its Application Here

The standard for collateral estoppel is well known. "Under collateral estoppel, or issue preclusion, the second suit is upon a different claim or cause of action. This doctrine's fundamental notion is that an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the same parties or their privies. Collateral estoppel saves parties and the courts from the waste and burden of relitigating stale issues, and, by discouraging inconsistent results, forwards public policy favoring the

establishment of certainty in legal relations. There are exceptions to the use of collateral estoppel. For example, a court should decline to give preclusive effect to a prior judgment if there have been changes either in the applicable legal rules or the factual predicates essential to that prior judgment. In addition, where pure questions of law—unmixed with any particular set of facts—are presented to a court, the interests of finality and judicial economy may be outweighed by other substantive policies." *United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 718–19 (2d Cir. 1993) (internal quotation marks and citations omitted). "Collateral estoppel generally applies if: (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity for litigation in the prior proceeding, and (4) the issues previously litigated were necessary to support a valid and final judgment on the merits." *Lord v. Int'l Marine Ins. Servs.*, 420 F. App'x 40, 41 (2d Cir. 2011) (summary order) (internal quotation marks and citations omitted).

The key to applying collateral estoppel here is understanding what the Second Circuit resolved in the 1993 Case with respect to the Thruway Easement. The background information above shows that the 1993 Case and this case are identical in all substantive ways concerning the Thruway Easement. After reviewing the archived file of the 1993 Case and the Second Circuit opinion, the Court concludes that the Second Circuit definitively resolved the following four points:

1) The Thruway Easement exists, and the documentation establishing it appears to be at least facially valid. The Court infers that the Second Circuit would not have wasted its time discerning ownership of the easement if the related documentation did not have the necessary signatures and at least appear to be in order.

2) The State of New York owns the Thruway Easement.

3) Any attack on the validity of the Thruway Easement is an attack on its owner's rights, meaning that the State of New York must have an opportunity to appear and to defend its rights.

15

4) Since the United States either has not been asked to intervene or has declined to intervene on behalf of the Seneca Nation, the State of New York cannot appear here because of sovereign immunity.

These four points prevent this case from going any further. The Seneca Nation litigated these points in the 1993 Case and lost. The Seneca Nation has advanced a number of arguments to try to avoid these four points, but every argument about ongoing federal violations or about directing state officials under *Ex parte Young* ultimately comes back to these four points. Put another way, as the Court tried to clarify at oral argument, there is no violation to address, and there is nothing to order state officials to do, without first negating one or more of the above points. That is enough to establish collateral estoppel and to require dismissal. *Cf., e.g., A. Morrison Trucking, Inc., v. Teamsters Local 282*, No. CV-06-767 (BMC)(RLM), 2007 WL 9719336, at *3 (E.D.N.Y. Feb. 16, 2007) ("Collateral estoppel prevents relitigation" of an issue resolved by the Second Circuit); *Rich Food Servs., Inc. v. Darling*, No. 5:02-CV-1447, 2004 WL 2202756, at *3 (N.D.N.Y. Sept. 17, 2004) ("The identical issues raised by plaintiffs in the prior action are again raised here. These issues were all determined in the prior action [by the Fourth Circuit].")

## IV. CONCLUSION

For all that the Court knows, the State of New York very well might have pressured the Seneca Nation into a procedurally improper and grossly unfair easement back in 1954. Fourteen years ago, however, the Second Circuit definitively resolved issues that make further litigation here impossible. This Court has to respect that. The Seneca Nation might still have remedies at the New York Court of Claims or perhaps through the political process. Those potential remedies, if available, are beyond this Court's ability to address.

For all of the above reasons, the Court respectfully recommends granting defendants' motion (Dkt. No 16).

## V. OBJECTIONS

A copy of this Report and Recommendation will be sent to counsel for the parties by electronic filing on the date below. "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Any objections must be filed electronically with the Clerk of the Court through the CM/ECF system.

"As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point." *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted); *see also Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision.") (citation omitted). "We have adopted the rule that failure to object timely to a magistrate judge's report may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object. The rule is enforced under our supervisory powers and is a nonjurisdictional waiver provision whose violation we may excuse in the interest of justice." *United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 38–39 (2d Cir. 1997) (internal quotation marks and citations omitted).

"Where a party only raises general objections, a district court need only satisfy itself there is no clear error on the face of the record. Indeed, objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review. Such objections would reduce the magistrate's work to something akin to a meaningless dress rehearsal." *Owusu v. N.Y. State Ins.*, 655

F. Supp. 2d 308, 312–13 (S.D.N.Y. 2009) (internal quotation and editorial marks and citations omitted).

SO ORDERED.

_/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: December 19, 2018