Donald Pongrace (*pro hac vice*)
James E. Tysse
Merrill C. Godfrey
Akin Gump Strauss Hauer & Feld, LLP
2001 K Street, N.W.
Washington, D.C. 20006-1037
(202) 887-4000
dpongrace@akingump.com
jtysse@akingump.com
mgodfrey@akingump.com

Brian T. Carney
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036-6745
(212) 872-8156
bcarney@akingump.com

*Attorneys for Seneca Nation*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SENECA NATION, a federally recognized Indian tribe,<br><br>       Plaintiff,<br><br>     v.<br><br>Andrew CUOMO, in his official capacity as Governor of New York, *et al.*,<br><br>       Defendants. | Case No. 1:18-cv-429<br><br>**SENECA NATION'S SUPPLEMENTAL BRIEF** |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT ......................................................................................................................3

I.  A SUIT AGAINST STATE OFFICIALS SEEKING TO BRING THEIR TREATMENT OF PROPERTY INTERESTS INTO COMPLIANCE WITH FEDERAL LAW IS A CLASSIC APPLICATION OF *EX PARTE YOUNG*. ......................3

    A.  Federal Courts Regularly Resolve *Ex Parte Young* Suits Against Sovereign Officials Challenging Their Ownership Or Disposition Of Sovereign Property Interests. ......................................................................................3

        1.  *The U.S. District Court for the Western District of New York previously adjudicated a case on all fours with the current suit.* ................3

        2.  *Federal courts' adjudication of* Ex parte Young *suits implicating sovereign property interests is a longstanding practice.* .............................4

        3.  *No exception to* Ex parte Young *exists for cases implicating sovereign property interests.* ....................................................................8

        4.  *Suits implicating property interests and other sovereign interests accord with the essential function of* Ex parte Young. ...............................10

    B.  The Nature Of The Relief the Nation Seeks In The Current Suit Addresses Any Concerns About Curtailment Of The State's Claimed Sovereign Interests. ...............................................................................................11

II.  SOVEREIGNS ARE NOT NECESSARY PARTIES IN *EX PARTE YOUNG* SUITS IMPLICATING PROPERTY INTERESTS. ............................................12

    A.  Sovereigns Are Not Required Parties In *Ex Parte Young* Suits When Their Officials Are Present In The Suit To Represent Sovereign Interests. ...................13

    B.  No Exception To Rule 19 Exists For Cases Implicating Sovereign Property Interests. ...............................................................................................15

CONCLUSION..................................................................................................................17

<u>**CASES**</u>**:**

*Agua Caliente Band of Cahuilla Indians v. Hardin*,
223 F.3d 1041 (9th Cir. 2000) ....................................................................................9, 11

*American Trucking Ass'n, Inc. v. New York State Thruway Auth.*,
795 F.3d 351 (2d Cir. 2015)...................................................................................14, 16, 17

*Arnett v. Myers*,
281 F.3d 552 (6th Cir. 2002) ...................................................................................7, 9

*CP Sols. PTE, Ltd. v. General Elec. Co.*,
553 F.3d 156 (2d Cir. 2009)...................................................................................15

*CSX Transp., Inc. v. New York State Office of Real Prop. Servs.*,
306 F.3d 87 (2d Cir. 2002)......................................................................................10

*Dakota, Minnesota & Eastern R.R. Corp. v. South Dakota*,
362 F.3d 512 (8th Cir. 2004) ...................................................................................11

*Disabled in Action v. Board of Elections in City of New York*,
752 F.3d 189 (2d Cir. 2014).....................................................................................12

*Duke Energy Trading & Mktg., LLC v. Davis*,
267 F.3d 1042 (9th Cir. 2001) .................................................................................11

*Edelman v. Jordan*,
415 U.S. 651 (1974).................................................................................................12

*Elephant Butte Irrigation Dist. of N.M. v. Department of Interior*,
160 F.3d 602 (10th Cir. 1998) .................................................................................6, 17

*Ex parte Young,*
209 U.S. 123 (1908).................................................................................................11

*Florida Dep't of State v. Treasure Salvors, Inc.*,
458 U.S. 670 (1982)...............................................................................................5, 12

*Gila River Indian Cmty. v. Winkelman*,
No. 05-cv-1934-PHX-EHC, 2006 WL 1418079 (D. Ariz. May 22, 2006) ...............7, 9, 12, 15

*Gingras v. Think Fin., Inc.*,
922 F.3d 112 (2d Cir. 2019).....................................................................................13

*Hill v. Kemp*,
478 F.3d 1236 (10th Cir. 2007) ...............................................................................8

*Idaho v. Coeur d'Alene Tribe of Idaho*,
521 U.S. 261 (1997)............................................................................5, 8, 9, 10

*In re Dairy Mart Convenience Stores, Inc.*,
411 F.3d 367 (2d Cir. 2005)..................................................................................9

*In re Deposit Ins. Agency*,
482 F.3d 612 (2d Cir. 2007)...................................................................... *passim*

*Indiana Prot. & Advocacy Servs. v. Indiana Family & Soc. Servs. Admin.*,
603 F.3d 365 (7th Cir. 2010) .................................................................................9

*Kansas v. United States*,
249 F.3d 1213 (10th Cir. 2001) ...........................................................................14

*Larson v. Domestic & Foreign Commerce Corp.*,
337 U.S. 682 (1949)...............................................................................................5

*Lipscomb v. Columbus Mun. Separate Sch. Dist.*,
269 F.3d 494 (5th Cir. 2001) .................................................................................7

*Marvel Characters, Inc. v. Kirby*,
726 F.3d 119 (2d Cir. 2013)...........................................................................15, 17

*Merritt Parkway Conservancy v. Mineta*,
No. 3:05-cv-860 (MRK), 2005 WL 2648683 (D. Conn. Oct. 14, 2005) ..................7

*Mille Lacs Band of Chippewa Indians v. State of Minn.*,
124 F.3d 904 (8th Cir. 1997) .................................................................................7

*Milliken v. Bradley*,
433 U.S. 267 (1977)..............................................................................................12

*Minnesota v. Mille Lacs Band of Chippewa Indians*,
526 U.S. 172 (1999)...............................................................................................7

*NAACP v. Merrill*,
939 F.3d 470 (2d Cir. 2019)...................................................................... *passim*

*Nisqually Indian Tribe v. Gregoire*,
No. 08-cv-5069-RBL, 2008 WL 1999830 (W.D. Wash. May 8, 2008) ............16, 17

*Salt River Project Agric. Improvement & Power Dist. v. Lee*,
672 F.3d 1176 (9th Cir. 2012) ................................................................... *passim*

*Santiago v. New York State Dep't of Corr. Servs.*,
945 F.2d 25 (2d Cir. 1991).................................................................................10

*Seneca Nation of Indians v. New York*,
383 F.3d 45 (2d Cir. 2004)................................................................................16

*Seneca Nation of Indians v. New York*,
397 F. Supp. 685 (W.D.N.Y. 1975) ...................................................... *passim*

*Severance v. Patterson*,
566 F.3d 490 (5th Cir. 2009) ..............................................1, 7, 11, 17

*Stanley v. Gallegos*,
No. 11-cv-1108 GBW/JHR, 2018 WL 1230485 (D.N.M. Mar. 8, 2018).................................7

*Suever v. Connell*,
439 F.3d 1142 (9th Cir. 2006) ...............................................................7

*Swann v. Charlotte-Mecklenburg Bd. of Educ.*,
402 U.S. 1 (1971)................................................................................12

*Thlopthlocco Tribal Town v. Stidham*,
762 F.3d 1226 (10th Cir. 2014) ...........................................................13

*Tindal v. Wesley*,
167 U.S. 204 (1897).............................................................4, 5, 10, 12

*United States v. Lee*,
106 U.S. 196 (1882)..........................................................................4, 12

*United States v. Peters*,
9 U.S. (5 Cranch) 115 (1809).....................................................................4

*University of Utah v. Max-Planck-Gesellschaft zur Forderung der Wissenschaften E.V.*,
881 F. Supp. 2d 151 (D. Mass. 2012) ...................................................7
734 F.3d 1315 (Fed. Cir. 2013)............................................................8

*Vann v. U.S. Dep't of Interior*,
701 F.3d 927 (D.C. Cir. 2012)...........................................2, 13, 17

*Verizon Maryland, Inc. v. Public Serv. Comm'n*,
535 U.S. 635 (2002)............................................................................1, 9

*Viacom Int'l, Inc. v. Kearney*,
212 F.3d 721 (2d Cir. 2000).................................................................14

*Virginia Office for Prot. & Advocacy v. Stewart*,
563 U.S. 247 (2011).............................................................................8

*Western Mohegan Tribe & Nation v. Orange Cty.*,
395 F.3d 18 (2d Cir. 2004)........................................................................................9, 12

**O**THER **A**UTHORITIES**:**

*Black's Law Dictionary* (11th ed. 2019)........................................................................2

F<small>ED</small>. R. C<small>IV</small>. P.
19 advisory committee's note to 2007 amendment ...............................................14
19(a)(1)(B)(i) .........................................................................................................14
19(b)(1) ..................................................................................................................15

**INTRODUCTION**

Plaintiff Seneca Nation submits this supplemental memorandum in response to the Court's request for further briefing on the following two related questions:

> (1) Is a sovereign a necessary party in a case adjudicating the ownership of property the sovereign claims it owns?

> (2) Is there any case law in which a lawsuit brought into question a state's valid ownership of property and the plaintiffs were able to proceed under *Ex parte Young*?

As demonstrated below, federal courts have long adjudicated *Ex parte Young* and similar suits implicating the validity of sovereign property interests. When *Ex parte Young* applies, a sovereign is not a necessary party even when a suit involves property or other important sovereign interests.

Beginning with the second question, the answer is "yes." For over a century, federal courts, including this Court, have addressed the validity of state property interests (and other significant sovereign interests) in adjudicating suits against state officials. *See, e.g.*, *In re Deposit Ins. Agency*, 482 F.3d 612, 620 (2d Cir. 2007); *Severance v. Patterson*, 566 F.3d 490, 495 (5th Cir. 2009); *Seneca Nation of Indians v. New York*, 397 F. Supp. 685, 686 (W.D.N.Y. 1975). Regardless of the nature of the state's interest, "[i]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Serv. Comm'n*, 535 U.S. 635, 645 (2002) (citation, internal quotation marks and alteration omitted); *accord NAACP v. Merrill*, 939 F.3d 470, 475 (2d Cir. 2019). Cases questioning the validity of sovereign property interests thus fall comfortably within the ambit of *Ex parte Young*.

On the Court's first question, the answer is "no." Consistent with established practice, a sovereign is not a required party under Federal Rule of Civil Procedure 19 when a sovereign official, who represents the sovereign's interest, is named as a defendant in an official capacity

1

under *Ex parte Young*. *See, e.g.*, *Vann v. U.S. Dep't of Interior*, 701 F.3d 927, 930 (D.C. Cir. 2012) (Kavanaugh, J.). That is true even when the lawsuit involves, as here, the State's interest in the use of land. *See, e.g.*, *Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1178, 1181 (9th Cir. 2012).

The answers to these questions follow naturally from a straightforward application of the *Ex parte Young* doctrine, which "'operates to end ongoing violations of federal law and vindicate the overriding federal interest in assuring the supremacy of [the] law.'" *Merrill*, 939 F.3d at 475 (quoting *In re Deposit*, 482 F.3d at 618) (alteration in original). The doctrine fulfills that function even when (as is typical) important sovereign interests are at stake. This Court should thus decline to carve out an unwarranted exception to *Ex parte Young*.

In any event, although the nature of the sovereign interest here does not bear on the application of the *Ex parte Young* doctrine, it is worth noting that the only property interest at issue is an easement, or "[a]n interest in land owned by another person," *Black's Law Dictionary* (11th ed. 2019). It is undisputed that the Nation holds title to the reservation land at issue. The Nation merely seeks to put in place a valid easement and requests an order compelling state officials to act accordingly. Rather than involving land "ownership," this case thus raises only the issue of whether a federal court may draw a legal conclusion about the validity of a sovereign's property interest, and decide how the sovereign's officials may treat that interest, when those officials are party to the suit but the sovereign itself is not. The Nation's attempted vindication of federal rights against state officials claiming immunity fully comports with more than a century of caselaw; indeed, it is precisely the situation that the *Ex parte Young* "fiction" is designed to address.

2

**ARGUMENT**

**I. A SUIT AGAINST STATE OFFICIALS SEEKING TO BRING THEIR TREATMENT OF PROPERTY INTERESTS INTO COMPLIANCE WITH FEDERAL LAW IS A CLASSIC APPLICATION OF *EX PARTE YOUNG*.**

Since at least the late nineteenth century and continuing into the present day, federal courts have adjudicated suits against sovereign officials in which the validity of the sovereign's claimed property interests is called into question. Moreover, the delimited relief the Nation seeks in this litigation is fully compliant with *Ex parte Young*.

**A. Federal Courts Regularly Resolve *Ex Parte Young* Suits Against Sovereign Officials Challenging Their Ownership Or Disposition Of Sovereign Property Interests.**

*1. The U.S. District Court for the Western District of New York previously adjudicated a case on all fours with the current suit.*

In rejecting sovereign immunity for Defendants here, the Court would be doing no more than Chief Judge Curtin did in a 1975 Western District of New York decision directly on point. There, New York State filed maps "describing land within the Allegany Reservation of the plaintiff which the State wished to appropriate in connection with the construction of a highway." *Seneca Nation*, 397 F. Supp. at 685. "The State claim[ed] that the filing vested title in the State of New York and extinguished plaintiff's right to the unrestricted use and occupancy of these lands." *Id.* Plaintiff Seneca Nation sued a state official—the Commissioner of Transportation, who is also a defendant in this action—arguing that "because of treaties between the Seneca Nation and the United States, the State is barred from appropriating reservation land." *Id.* The plaintiff thus explicitly challenged the State's asserted "vested title" in property.

Nevertheless, the court brushed aside the State's sovereign immunity defense. *Seneca Nation*, 397 F. Supp. at 685. Citing *Ex parte Young*, the court recognized that "an Indian Tribe is not prohibited by the eleventh amendment from suing to enjoin the actions of a state official which

conflict with treaty rights." *Id.* at 686. The court went on to rule that the official could not appropriate the tribe's land. *Id.* at 686-687. Notably, in arriving at this determination, the court stated that New York State was not authorized "to appropriate land belonging to the Indians" under applicable state and federal law. *Id.* at 687. The court, in other words, drew conclusions about New York State's asserted rights over property in adjudicating an *Ex parte Young* suit against a state official. The current case calls for exactly the same approach.

> 2. *Federal courts' adjudication of* Ex parte Young *suits implicating sovereign property interests is a longstanding practice.*

Chief Judge Curtin's decision was a routine application of a time-honored principle: Federal courts may adjudicate suits against sovereign officials contesting their ownership or disposition of property interests, notwithstanding the sovereign's immunity. As early as 1809, Chief Justice Marshall stated, in a case involving state sovereign immunity, that "it certainly can never be alleged, that a mere suggestion of title in a state to property, in possession of an individual, must arrest the proceedings of the court, and prevent their looking into the suggestion, and examining the validity of the title." *United States v. Peters*, 9 U.S. (5 Cranch) 115, 139-140 (1809).

In fact, the Supreme Court did not shy away when such "suggestion[s] of title" were made. For example, in *United States v. Lee*, 106 U.S. 196, 242-243 (1882), the son of General Robert E. Lee sued to eject federal officers from property the United States had seized on the ground that taxes had allegedly not been paid. The Court rejected a sovereign immunity defense, finding it implausible "that the courts cannot give remedy when the citizen" has had "his estate seized and converted to the use of the government without any lawful authority." *Id.* at 220-221.

Likewise, in *Tindal v. Wesley*, 167 U.S. 204 (1897), the Court upheld a finding that the state lacked title in a suit against state officers for illegally occupying a piece of property. Rebuffing a state sovereign immunity defense, the Court dismissed "the idea that a suit against individuals to

recover possession of real property is a suit against the state simply because the defendant holding possession happens to be an officer of the state, and asserts that he is lawfully in possession on its behalf." *Id.* at 221. Were it otherwise, "a state, by its officers, acting under a void statute, [c]ould seize for public use the property of a citizen" in violation of due process guaranteed by the Constitution, and yet leave "the citizen . . . remediless so long as the state, by its agents, chooses to hold his property." *Id.* at 222. Consequently, the Court left undisturbed the finding "that the plaintiff is entitled to possession, and that the assertion by the defendants of right of possession and title in the state is without legal foundation." *Id.* at 212; *see also id.* at 223.

*Ex parte Young* confirmed that prospective relief against sovereign officials is available to remedy violations of federal law despite state claims of sovereign immunity. Following *Ex parte Young*, the Supreme Court affirmed that "specific relief in connection with property held or injured by officers of the sovereign acting in the name of the sovereign" could be granted "where there was a claim that the taking of the property or the injury to it was not the action of the sovereign because unconstitutional or beyond the officer's statutory powers." *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 698 (1949) (footnote omitted). For example, in *Florida Department of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 673 (1982), the Court "allowed a Federal District Court to issue a warrant commanding state officials to turn over various artifacts . . . to the United States Marshal despite the State's claim of sovereign immunity." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281 (1997) (citing *Treasure Salvors*, 458 U.S. 670). A plurality of the Court in *Treasure Salvors* concluded that state officials "acted without legitimate authority in withholding the property at issue." *Treasure Salvors*, 458 U.S., at 692-694 (plurality opinion).

The Second Circuit has recognized that *Ex parte Young* enables suits challenging sovereign officials' disposition of property. In *In re Deposit Insurance Agency*, the court of appeals allowed an *Ex parte Young* suit against New York State's Superintendent of Banks in which the petitioner claimed "that the Superintendent [wa]s committing an ongoing violation of federal law by taking possession of and retaining assets that, under [federal law] . . . must be released to the [petitioner]." 482 F.3d at 618. The Second Circuit rejected the argument that the petitioner's suit was the equivalent of a "quiet title" action against the State, observing that "arguments of this nature have never prevented a federal court from providing relief from governmental officials taking illegal possession of property in violation of federal law." *Id.* at 619. An *Ex parte Young* suit, the court underscored, appropriately includes a "prayer for relief to dispossess a state official of assets and some of the incidents of ownership thereof under authority of controlling federal law." *Id.* at 620.

Other courts of appeals have also greenlighted *Ex parte Young* suits calling into question the validity of sovereign property interests. For instance, the Tenth Circuit in 1998 permitted an *Ex parte Young* suit against state officials alleged to be "illegally retaining net profits under a recreational land lease" the State of New Mexico had signed with the United States. *Elephant Butte Irrigation Dist. of N.M. v. Department of Interior*, 160 F.3d 602, 605 (10th Cir. 1998). The plaintiffs, local water improvement districts, argued they were "third-party beneficiaries of the lease agreement." *Id.* at 606. The plaintiffs sought either a declaration that the lease was "ultra vires" or reformation of the lease to provide them with revenues. *Id.* The suit asked the district court to "determin[e] the validity of a property interest—New Mexico's claim to profits under the lease." *Id.* at 612. Even so, the Tenth Circuit held that such a suit was proper under *Ex parte Young*. *Id.* at 613.

To take another example, the Fifth Circuit in 2009 authorized a plaintiff's *Ex parte Young* suit against Texas officials for enforcing an easement over her property in violation of the Fourth and Fifth Amendments. *See Severance*, 566 F.3d at 492-493. As here, the plaintiff's suit challenged the state's claimed easement, and therefore was not "the functional equivalent of a quiet-title action," because "[t]itle to the properties at issue rests with [the plaintiff], not the State." *Id.* at 495. Rather, "[t]he issue [wa]s whether the State may constitutionally impose an easement, or an encumbrance," and that issue could appropriately be litigated under *Ex parte Young*. *Id.*

Numerous other courts have adjudicated *Ex parte Young* suits implicating the validity of sovereign property interests as well. *See, e.g.*, *Suever v. Connell*, 439 F.3d 1142, 1143 (9th Cir. 2006) (suit claiming state officials unlawfully seized their property under an escheat system); *Arnett v. Myers*, 281 F.3d 552, 567-568 (6th Cir. 2002) (suit challenging state officials' actions depriving plaintiffs of their property interests and riparian rights); *Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 269 F.3d 494, 498 (5th Cir. 2001) (suit against state official arguing that efforts to invalidate lease violated the Contract Clause); *Mille Lacs Band of Chippewa Indians v. State of Minn.*, 124 F.3d 904, 912-914 (8th Cir. 1997), *aff'd sub nom. Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172 (1999) (suit by Indian tribe claiming usufructuary rights to hunt, fish, and gather under a treaty); *Stanley v. Gallegos*, No. 11-cv-1108 GBW/JHR, 2018 WL 1230485, at *2 (D.N.M. Mar. 8, 2018) (suit claiming private ownership of a road that state officials contended was public); *Gila River Indian Cmty. v. Winkelman*, No. 05-cv-1934-PHX-EHC, 2006 WL 1418079, at *1 (D. Ariz. May 22, 2006) (suit by Indian tribe claiming "unextinguished aboriginal title in [a] disputed property" that Arizona alleged Congress had granted to the State); *Merritt Parkway Conservancy v. Mineta*, No. 3:05-cv-860 (MRK), 2005 WL 2648683, at *9 (D. Conn. Oct. 14, 2005) (suit challenging construction of a highway project in violation of federal

requirements); *University of Utah v. Max-Planck-Gesellschaft zur Forderung der Wissenschaften E.V.*, 881 F. Supp. 2d 151, 155 (D. Mass. 2012), *aff'd*, 734 F.3d 1315 (Fed. Cir. 2013) (suit against state officials with the "effect [of] . . . depriv[ing] the state of Massachusetts of its intellectual property").

> 3. *No exception to* Ex parte Young *exists for cases implicating sovereign property interests.*

As the above-cited cases demonstrate, courts do not treat *Ex parte Young* suits differently simply because they might implicate sovereign property interests. That continues to be true following the Supreme Court's 1997 decision in *Coeur d'Alene*. As explained in prior briefing (Pl.'s Objs. 22-25 (ECF No. 32)), in *Coeur d'Alene* a fractured Court held (with Justice O'Connor's concurrence as the controlling opinion) that an *Ex parte Young* suit could not proceed when the plaintiff sought "to eliminate altogether the State's regulatory power over the submerged lands at issue—to establish not only that the State has no right to possess the property, but also that the property is not within Idaho's sovereign jurisdiction at all." 521 U.S. at 289 (O'Connor, J., concurring in part and concurring in the judgment); *see also Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 257 (2011) (*Coeur d'Alene* sought to establish the "invalidity of all state statutes and regulations governing" "submerged lands").

*Coeur d'Alene* has since been limited to its "particular and special circumstances." 521 U.S. at 287. As then-Judge Gorsuch observed in a Tenth Circuit case, the Supreme Court has since "abrogated" any interpretation of *Coeur d'Alene* requiring courts to "examine whether the relief sought against a state official" in an *Ex parte Young* suit "implicates special sovereignty interests." *Hill v. Kemp*, 478 F.3d 1236, 1259 (10th Cir. 2007) (citation and internal quotation marks omitted). Specifically, in *Verizon Maryland, Inc. v. Public Service Commission*, the Supreme Court clarified that *Ex parte Young* calls for "a straightforward inquiry into whether the complaint alleges an

ongoing violation of federal law and seeks relief properly characterized as prospective." 535 U.S. at 645 (citation, internal quotation marks and alteration omitted).

The Second Circuit has faithfully pursued *Verizon*'s "straightforward inquiry" in *Ex parte Young* cases. *See Merrill*, 939 F.3d at 475; *In re Deposit*, 482 F.3d at 618. Accordingly, it has applied *Coeur d'Alene* only when the plaintiff sought "the virtually identical 'unique divestiture of the state's broad range of controls over its own lands' that was at issue in *Coeur d'Alene*." *Western Mohegan Tribe & Nation v. Orange Cty.*, 395 F.3d 18, 23 n.4 (2d Cir. 2004); *see also In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372 (2d Cir. 2005) (characterizing *Coeur D'Alene* in dicta as a case about "strong governmental land interests," but permitting an *Ex parte Young* suit seeking relief related to environmental cleanup costs). In repeatedly "declin[ing] to extend *Coeur d'Alene*'s holding," *Western Mohegan*, 395 F.3d at 23, the Second Circuit has acted in parallel with other courts of appeals. *See, e.g.*, *Arnett*, 281 F.3d at 568 ("[T]his court does not read the ruling of *Coeur d'Alene* to extend to every situation where a state property interest is implicated."); *Indiana Prot. & Advocacy Servs. v. Indiana Family & Soc. Servs. Admin.*, 603 F.3d 365, 372 (7th Cir. 2010) (describing *Coeur d'Alene* as an "unusual case" and observing that *Verizon*'s "straightforward inquiry" now governs); *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1048 (9th Cir. 2000) (permitting an *Ex parte Young* challenge to a state taxation scheme and characterizing *Coeur d'Alene* as "unique").

The current case has nothing to do with "sovereign control over submerged lands, lands with a unique status in the law." *Coeur d'Alene*, 521 U.S. at 283; *see Gila River*, 2006 WL 1418079 at *1, *3 (finding no sovereign immunity impediment to an *Ex parte Young* suit involving competing state and tribal claims to a disputed tract of land, as the case did "not implicate the unique interest in submerged lands that was central to the decision in [*Coeur d'Alene*].").

Moreover, the Nation's suit here will not strip New York State of "sovereign jurisdiction," *Coeur d'Alene*, 521 U.S. at 289 (O'Connor, J., concurring in part and concurring in the judgment). And the Nation's suit does not seek to divest the State of title. *See* Pl.'s Objs. 24 (ECF No. 32). As a result, sovereign immunity poses no barrier to the Nation's *Ex parte Young* suit.

> 4. *Suits implicating property interests and other sovereign interests accord with the essential function of* Ex parte Young.

Courts' continued willingness to adjudicate *Ex parte Young* suits calling into question sovereigns' ownership or disposition of property makes eminent sense. The "fictional" nature of *Ex parte Young* is a feature, not a bug; the doctrine functions precisely to vindicate federal law when a sovereign is immune from suit. *See Merrill*, 939 F.3d at 475; *Santiago v. New York State Dep't of Corr. Servs.*, 945 F.2d 25, 28–29 (2d Cir. 1991). If *Ex parte Young* did not apply when a property interest is at stake, then state officials could simply appropriate Indian land, as in Chief Judge Curtin's case, and permanently escape suit in federal court. *See Seneca Nation*, 397 F. Supp. at 685; *see also* Oct. 17, 2019 Hearing Tr. 25-26. In fact, that scenario is the precise concern the Supreme Court expressed more than a century ago, when it rejected a reading of the Eleventh Amendment that would allow a state's officers to illegally "seize for public use the property of a citizen" and then leave "the citizen . . . remediless so long as the state, by its agents, chooses to hold his property." *Tindal*, 167 U.S. at 222. That is why the *Ex parte Young* fiction is necessary to "vindicate the overriding federal interest in assuring the supremacy of [federal] law." *In re Deposit*, 482 F.3d at 618 (citation and internal quotation marks omitted).

Besides property interests, courts regularly address a range of important sovereign interests in *Ex parte Young* suits. These interests include Connecticut's ability to maintain its redistricting plan, *Merrill*, 939 F.3d at 476; New York State's tax collection system, *CSX Transportation, Inc. v. New York State Office of Real Property Services*, 306 F.3d 87, 98-99 (2d Cir. 2002); the

10

"regulation of eminent domain," *Dakota, Minnesota & Eastern Railroad Corp. v. South Dakota*, 362 F.3d 512, 516 (8th Cir. 2004); and "the State's sovereignty interest in the gubernatorial exercise of emergency powers," *Duke Energy Trading & Marketing, LLC v. Davis*, 267 F.3d 1042, 1054 (9th Cir. 2001). The *Ex parte Young* suit itself was a constitutional challenge to a state railroad rate scheme that affected "property[] owned by many thousands of people, who are scattered over the whole country." 209 U.S. 123, 165 (1908). And "the police power, too, is a core sovereign interest." *Dakota*, 362 F.3d at 517 (internal quotation marks omitted). Yet to hold that *Ex parte Young* is inapplicable to suits implicating such "core" sovereign interests "would effectively overrule the *Ex parte Young* doctrine." *Id.*; *see also Agua Caliente*, 223 F.3d at 1048. *Ex parte Young* does not cease to apply simply because a suit calls a sovereign's claimed property interests into question.

**B.     The Nature Of The Relief the Nation Seeks In The Current Suit Addresses Any Concerns About Curtailment Of The State's Claimed Sovereign Interests.**

Because the Nation's "complaint (a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective," *Merrill*, 939 F.3d at 475 (citation and internal quotation marks omitted), the State's asserted sovereign interests are no obstacle. Still, it bears repeating that the relief the Nation seeks is relatively modest notwithstanding the profound incursion the State has made on the Nation's own sovereign property. First, the Nation does *not* seek to "divest[] the State of its title." *In re Deposit*, 482 F.3d at 620. The Nation already undisputedly holds title to the lands of its Reservation. *See Severance*, 566 F.3d at 495 (distinguishing between a "quiet-title action" and a suit over "whether the State may constitutionally impose an easement"). In adjudicating the suit, this Court would not decide whether the State has title to land. The Court would only require the state officials to take the appropriate measures to cure the invalidity of the easement.

Second, the Nation requests a judgment against state officials, *not* against New York State. *See In re Deposit*, 482 F.3d at 620; *Lee*, 106 U.S. at 262; *Tindal*, 167 U.S. at 223; *Treasure Salvors*, 458 U.S. at 688 (plurality opinion); *Gila River*, 2006 WL 1418079 at *4.

Third, the relief the Nation seeks against state officials is limited in nature. The Nation does not seek to eject state officials from the easement or to shut down the Thruway. *See* Compl. 14 (ECF No. 1). Nor does the Nation seek a "declaration of [its] entitlement to the exclusive use, occupancy, and right to quiet enjoyment of certain lands." *Western Mohegan*, 395 F.3d at 21. Instead, the Nation requests an injunction that would effectively require state officials to negotiate a new lease upon equitable terms. The Nation seeks simply to induce state officials to "conform their conduct to requirements of federal law." *Milliken v. Bradley*, 433 U.S. 267, 289 (1977); *see Edelman v. Jordan*, 415 U.S. 651, 668 (1974).

"[T]he scope of a district court's equitable powers . . . is broad, for breadth and flexibility are inherent in equitable remedies." *Disabled in Action v. Board of Elections in City of New York*, 752 F.3d 189, 198 (2d Cir. 2014) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)). The Nation asks the Court to exercise this flexibility to correct an ongoing violation of federal law in a manner that would take into account all of the equities. Remedial considerations provide no basis for not allowing the Nation's request even to get off the ground.

## II. SOVEREIGNS ARE NOT NECESSARY PARTIES IN *EX PARTE YOUNG* SUITS IMPLICATING PROPERTY INTERESTS.

As the Court observed at oral argument, the necessary party and *Ex parte Young* issues are closely related. The many instances in which courts have adjudicated *Ex parte Young* suits against sovereign officials implicating the validity of property interests, *see supra* at I.A.2, show that sovereigns need not be parties when their officials are named in these suits. The case law on "required" parties under Federal Rule of Civil Procedure 19 further confirms this conclusion. As

Defendants have conceded, "a Rule 19 failure to join an indispensable, immune party can be cured by suing state officials in their official capacity for prospective injunctive relief." Defs.' Resp. to Pl.'s Objs. to the R. & R. of Magistrate Judge Hugh B. Scott 6 (ECF No. 36). Defendants were correct to concede the point, for a contrary holding "would effectively gut the *Ex parte Young* doctrine." *Salt River*, 672 F.3d at 1181.

### A. Sovereigns Are Not Required Parties In *Ex Parte Young* Suits When Their Officials Are Present In The Suit To Represent Sovereign Interests.

It is central to the viability of *Ex parte Young* that a sovereign need not be joined when its officials are named in the suit. As then-Judge Kavanaugh explained in a D.C. Circuit *Ex parte Young* suit against the Principal Chief of a sovereign Indian tribe: Under *Ex parte Young*, the "Principal Chief can adequately represent the Cherokee Nation in this suit," and therefore the "Cherokee Nation itself is not a required party for purposes of Rule 19." *Vann*, 701 F.3d at 929-930.[1] Otherwise, "official-action suits against government officials would have to be routinely dismissed . . . because the government entity in question would be a required party yet would be immune from suit and so could not be joined. But that is not how the *Ex parte Young* doctrine and Rule 19 case law has developed." *Id.* at 930. Other courts of appeals are in accord. *See, e.g.*, *Salt River*, 672 F.3d at 1181; *Thlopthlocco Tribal Town v. Stidham*, 762 F.3d 1226, 1236 (10th Cir. 2014); *see also* Pl.'s Objs., ECF No. 32, at 11-13. This is nothing more than an application of "basic *Ex parte Young* principles." *Vann*, 701 F.3d at 930.

These decisions declining to treat sovereigns as necessary parties in *Ex parte Young* suits follow not only from the nature of *Ex parte Young*, but also from Rule 19 itself. That Rule deems a party to be "required" if, among other factors, "disposing of the action in the person's absence

---

[1] *Ex parte Young* suits may be brought against sovereign Indian tribes in addition to sovereign States. *See Gingras v. Think Fin., Inc.*, 922 F.3d 112, 121 (2d Cir. 2019).

13

may . . . as a practical matter impair or impede the person's ability to protect the interest." FED. R. CIV. P. 19(a)(1)(B)(i). Because a sovereign official named in an official capacity can "adequately represent" the sovereign, the sovereign is not a required party under this provision. *Salt River*, 672 F.3d at 1181.

This case amply illustrates the principle that sovereign officials representing the sovereign in *Ex parte Young* suits are not required parties. There is scant reason to doubt that the defendant state officials—New York State's Governor, Attorney General, Transportation Commissioner, and Comptroller—can protect New York State's interests. These defendants, sued in their official capacities, are represented by New York's Attorney General. *See American Trucking Ass'n, Inc. v. New York State Thruway Auth.*, 795 F.3d 351, 360 (2d Cir. 2015) (observing that New York's Attorney General "serves as the guardian of the legal rights of the citizens of New York, its organizations and its natural resources") (citation and internal quotation marks omitted). As such, "there is no reason to believe the . . . official defendants cannot or will not make any reasonable argument that the [State] would make if it were a party." *Salt River*, 672 F.3d at 1180; *see also Kansas v. United States*, 249 F.3d 1213, 1227 (10th Cir. 2001). Therefore, New York State is not a required party in this suit.

Even if a party is "required" under Federal Rule of Civil Procedure 19(a), moreover, a court may not dismiss the suit unless it also finds that the party is indispensable under Rule 19(b). *See Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 725 (2d Cir. 2000).[2] A key factor to consider in this analysis is "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties." Fed. R. Civ. P. 19(b)(1). As the Second Circuit has repeatedly

---

[2] A 2007 amendment to Rule 19 discarded the term "indispensable," but it was not intended to have a substantive effect. FED. R. CIV. P. 19 advisory committee's note to 2007 amendment.

held, a party is not prejudiced when a remaining party can "champion its interest." *CP Sols. PTE, Ltd. v. General Elec. Co.*, 553 F.3d 156, 160 (2d Cir. 2009); *see also Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 134 (2d Cir. 2013). In fact, "prejudice to absent parties approaches the vanishing point when the remaining parties are represented by the same counsel, and when the absent and remaining parties' interests are aligned in all respects." *Marvel Characters,* 726 F.3d at 134. Here, Defendants and New York State would be "represented by the same counsel, and the defendants have not alerted [the court] to any evidence that suggests [Defendants'] and [New York State's] interests are adverse." *CP Sols.*, 553 F.3d at 160. Given Defendants' presence in the suit, New York State is hardly an indispensable party.

B.    **No Exception To Rule 19 Exists For Cases Implicating Sovereign Property Interests.**

As demonstrated by the array of *Ex parte Young* cases cited above calling into question the validity of sovereign property interests, *see supra* at I.A.2, sovereigns represented by state officials do not become required parties merely because a property interest enters the picture. In a case with clear parallels to the current one, an Indian tribe sued an Arizona official over rights to a disputed tract of land. *Gila River*, 2006 WL 1418079 at *1. The tribe "claim[ed] unextinguished aboriginal title in the disputed property," whereas the Arizona official "claim[ed] the disputed property is school trust land Congress granted to Arizona." *Id.* The court permitted the tribe to bring an *Ex parte Young* suit that would require the court to draw a conclusion about the existence of the tribe's aboriginal title and its "right to occupy the disputed land." *Id.* at *5. Nevertheless, the court held that the State of Arizona was not an indispensable party. *Id.* The state official, the court explained, "can properly represent Arizona's interest in the state lands." *Id.* Precisely the same is true in this case.

15

Other courts similarly decline to treat sovereign officials as necessary or indispensable in disputes over property interests. In *Salt River v. Lee*, the owners of a power plant sued a sovereign Indian tribe. 672 F.3d at 1177-1178. The plaintiffs claimed that the tribe "lacked authority to regulate employment matters at the power plant," contending (among other claims) that "a federal statutory right-of-way . . . extinguished all Indian uses of the covered lands." *Id.* at 1178. The Ninth Circuit held that the tribe was *not* a necessary party in this dispute over the use of property. *Id.* at 1181. Tribal officials could adequately represent the tribe's interest, *id.* at 1180-1181, and the suit was "a routine application of *Ex parte Young*." *Id.* at 1177. Notably, the Ninth Circuit denied that the sovereign tribe "automatically is a necessary party to any action challenging a lease to which the tribe is a signatory." *Id.* at 1181. Along similar lines, another court permitted an *Ex parte Young* suit against tribal officials challenging the validity of a provision in a compact the State of Washington had signed pertaining to the use of Indian land. *Nisqually Indian Tribe v. Gregoire*, No. 08-cv-5069-RBL, 2008 WL 1999830, at *6 (W.D. Wash. May 8, 2008). Naming tribal officials instead of the tribe, the court stated, would "cure the indispensability defect" arising from the tribe's sovereign immunity. *Id.* at *3.

The fact that the Nation has named state officials under *Ex parte Young* is one critical difference between the current case and *Seneca Nation of Indians v. New York*, 383 F.3d 45 (2d Cir. 2004)—which, as explained in the Nation's Objections, ECF No. 32, at 9-18, never addressed the legal theory at issue here. In dicta, the Second Circuit has characterized *Seneca Nation* as suggesting "that an absent sovereign *may* be a necessary party to a lawsuit that calls into question a real property interest of the sovereign." *American Trucking*, 795 F.3d at 357 n.2 (emphasis added). That statement has no bearing on the time-worn convention of naming sovereign officials in order to challenge their illegal conduct when the sovereign is immune. Even if a sovereign

16

might *otherwise* be required, its officials' presence in an *Ex parte Young* suit allows the case to proceed.  *See Nisqually*, 2008 WL 1999830 at *5; *American Trucking*, 795 F.3d at 360-361; *Vann*, 701 F.3d at 929-930; *Salt River*, 672 F.3d at 1181; *see also Marvel*, 726 F.3d at 134.

The caselaw interpreting Rule 19 thus accords with the core function of *Ex parte Young*: to enable plaintiffs to hold officials to account for continuing violations of federal law despite sovereign immunity.  *See Merrill*, 939 F.3d at 475.  Consistent with that function, for over a century, numerous courts—including the Western District of New York and the Second Circuit— have adjudicated *Ex parte Young* suits against sovereign officials in which the validity of sovereign property interests is called into question.  *See, e.g.*, *Seneca Nation*, 397 F. Supp. at 686; *In re Deposit*, 482 F.3d at 618; *Severance*, 566 F.3d at 495; *Elephant Butte*, 160 F.3d at 605.  This Court should decline any invitation to thwart the longstanding role of *Ex parte Young* by carving out an unsupported exception for cases involving the validity of sovereign property interests.

## CONCLUSION

The Court should reject the Magistrate Judge's Report and deny Defendants' motion to dismiss.

DATED this 15th day of November 2019.

Respectfully submitted,

*/s/* James E. Tysse

Donald Pongrace (*pro hac vice*)
James E. Tysse
Merrill C. Godfrey
Akin Gump Strauss Hauer & Feld, LLP
2001 K Street, N.W.
Washington, D.C. 20006-1037
(202) 887-4000
dpongrace@akingump.com
jtysse@akingump.com
mgodfrey@akingump.com

Brian T. Carney
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036-6745
(212) 872-8156
bcarney@akingump.com

*Attorneys for Seneca Nation*