UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

—————————————————————

SENECA NATION, a federally recognized
Indian tribe,

        Plaintiff,

   v.

ANDREW CUOMO, in his official capacity
as Governor of New York, et al.,

        Defendants.

—————————————————————

18-CV-429
DECISION & ORDER

On April 11, 2018, the plaintiff, the Seneca Nation of Indians ("the Nation"),

commenced this action seeking to "enjoin New York State officers and the New York

State Thruway Authority from continuing violations of federal law" stemming from "an

illegal easement on which a portion of the New York State Thruway, a toll road, is built."

Docket Item 1 at 2.  On June 5, 2018, the defendants moved to dismiss.  Docket Item

16.

On June 14, 2018, this Court referred this case to United States Magistrate

Judge Hugh B. Scott for all proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B).

Docket Item 17.  On August 10, 2018, the Nation responded to the defendants' motion

to dismiss, Docket Item 22, and on September 10, 2018, the defendants replied, Docket

Item 23.

On December 19, 2018, Judge Scott issued a Report and Recommendation

("R&R") finding that the defendants' motion should be granted.  Docket Item 29.  On

January 16, 2019, the Nation objected to the R&R.  Docket Item 32.  On February 7,

2019, the defendants responded, Docket Item 36, and on February 21, 2019, the Nation replied, Docket Item 37.

This Court held oral argument on October 17, 2019, and ordered supplemental briefing.  Docket Item 39.  On November 15, 2019, the Nation submitted its supplemental brief.  Docket Item 41.  The defendants responded on January 3, 2020, Docket Item 44, and the Nation replied on January 31, 2020, Docket Item 47.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully and thoroughly reviewed the R&R, the record in this case, the objection and response, and the materials submitted by the parties.  Based on that *de novo* review, the Court respectfully rejects Judge Scott's recommendation and denies the defendants' motion to dismiss.  Because the issues are so difficult and weighty, however, and because an immediate appeal from this decision and order may advance the ultimate termination of the litigation, the Court permits the defendants to seek an interlocutory appeal under 28 U.S.C. § 1292(b).

## BACKGROUND

## I.    THE COMPLAINT

The complaint tells the following story.[1]  "On October 5, 1954, the Nation purported to convey a permanent easement for a portion of the New York State

---

[1]  On a motion to dismiss, the Court must "accept[ ] all factual allegations as true and draw[ ] all reasonable inferences in favor of the plaintiff."  *Trustees of Upstate N.Y.*

Thruway to be constructed and used over approximately 300 acres of the Nation's Cattaraugus Reservation."  Docket Item 1 at 4.  In exchange for the easement, New York State ("the State") made a "one-time payment of $75,500 to the Nation and other smaller amounts of compensation for displaced members of the Nation occupying such lands."  *Id.* at 9.  But the "easement was never legally valid or effective because . . . [t]he [s]tate officials who negotiated and obtained the easement did not comply with . . . federal law . . . ."  *Id.* at 4-5.  More specifically,

> In 1954, under federal law, a valid easement over the Nation's Cattaraugus Reservation could not be obtained without approval of the Secretary of the Interior pursuant to 25 U.S.C. § 177, 25 U.S.C. § 323, and applicable regulations. . . .  The [s]tate officials who negotiated and obtained the easement did not comply with these statutes or applicable regulations.

*Id.* at 5.

"Since October 5, 1954, motorists have continuously entered the Nation's Territory on the Thruway."  *Id.* at 9.  "The Thruway Authority or its agents have collected and remitted to the Comptroller tolls, some of which are derived from the purported grant by the Thruway of a right to traverse the Nation's lands, in violation of federal law protecting the Nation's lands."  *Id.*

Moreover, "[s]ince at least 1993, the Nation has openly denied any validity for the purported easement, which was void *ab initio* under federal law."  *Id.* at 10.  "For example, the Nation has asked the Thruway Authority to collect tolls for the Nation and to remit them to the Nation for the use of its lands by motorists on the Thruway."  *Id.*

---

*Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016) (citing *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014)).

But "[t]he Thruway Authority has refused to do so and continues to assert the validity of the easement notwithstanding the failure to comply with federal law." *Id.*

## II.   THE 1993 LAWSUIT

In 1993, the Nation filed a lawsuit in this Court against the State and the Thruway Authority, "alleging, *inter alia,* that the easement was void because it was not ratified by the federal government and thus violated the Indian Trade and Intercourse Act (commonly called the 'Non-Intercourse Act'), codified at 25 U.S.C. § 177." *Seneca Nation of Indians v. New York*, 383 F.3d 45, 47 (2d Cir. 2004) (per curiam).  There were three named defendants:  the Thruway Authority, its Executive Director, and the State. *See* Docket Item 32 at 11.[2]  At summary judgment, the defendants argued, among other things, that the court lacked jurisdiction over the State under the Eleventh Amendment and that the case should be dismissed under Federal Rule of Civil Procedure 19 because the State was a necessary and indispensable party.

United States Magistrate Judge Carol Heckman recommended dismissal under Rule 19.  Docket Item 29-2.  Judge Heckman reached several other conclusions, including that the Thruway easement was invalid under the Non-Intercourse Act for failure to obtain approval from the Secretary of the Interior.  *See id.* at 6-14.

After receiving objections, United States District Judge Richard J. Arcara adopted Judge Heckman's recommendation and found that the State was an indispensable party

---

[2]  The 1993 lawsuit also involved a separate claim regarding the ownership of certain land within the geographic boundaries of the State, including Grand Island.  That claim was brought against a number of state officials, including Governor Pataki.  *See Seneca Nation*, 383 F.3d at 46 n.1.

under Rule 19; he did not, however, reach the merits or adopt Judge Heckman's other findings.  Docket Item 32 at 36-37.

On appeal, the Second Circuit affirmed dismissal "under Rule 19(b) [because] the action could not proceed against the Thruway Authority and its executive director in the State's absence."  *Seneca Nation*, 383 F.3d at 47-49.  Like the district court, the Second Circuit did not reach the issue of whether the easement was valid.  *See id.* at 47 n.2 ("Judge Arcara declined to adopt Magistrate Judge Heckman's findings that the transaction [violated] the Non-Intercourse Act and that the Non-Intercourse Act's requirements were not lifted by subsequent legislation, and declined to address Defendants' argument that the [Nation] ratified the agreement by their subsequent acts. Accordingly, the parties did not brief—and we do not reach—these issues.").

## III.   THE CURRENT LAWSUIT

On April 11, 2018, the Nation again filed suit concerning the easement.  Docket Item 1.  This time, however, it named various state officials in their official capacities, including Governor Andrew Cuomo.  *Id.*  In this suit, the Nation seeks, among other things, "[a]n injunction requiring that the Defendants (except for the Comptroller) obtain a valid easement . . . ; or, in the alternative, an order enjoining the Defendants (except for the Comptroller) from collecting tolls for the portion of the Nation's Reservation on which the Thruway is situated without first obtaining a valid easement"; "[a]n injunction requiring that the Comptroller of the State of New York segregate and hold in escrow all future toll monies collected on the Thruway that are fairly attributable to the portion of the Thruway operated in violation of the Nation's federal protected property rights"; and "[a] declaration that [the] Defendants (other than the Comptroller) are violating federal

law by not obtaining a valid easement for the portion of the Thruway over the Nation's

Reservation lands."  *Id.* at 14.

## DISCUSSION

### I.  LEGAL STANDARD

To survive a motion to dismiss, a complaint must include sufficient factual matter,

accepted as true, "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting

*Twombly*, 550 U.S. at 556).

### II.  FAILURE TO RAISE SPECIFIC OBJECTIONS TO THE R&R

As a threshold matter, the defendants argue that the Nation failed to specifically

identify the portions of the R&R to which it objected as required by Local Rule 72(b).

Docket Item 36 at 4.  On the contrary, the first paragraph of the objection specifies that

the Nation objects to:

> (1) the portions of the R&R recommending that this Court
> dismiss the complaint on the ground of issue preclusion
> [collateral estoppel], *see* R&R 14-16; (2) the portions of the
> R&R declining to accept as true all of the well pleaded
> factual allegations (and favorable inferences therefrom) on a
> motion to dismiss, *see* R&R 2-4, 15-16; and (3) the R&R's
> failure to find that the Nation adequately pleaded claims
> seeking prospective relief for ongoing violations of federal
> law under *Ex parte Young*, 209 U.S. 123,160 (1908).

Docket Item 32 at 7.  Thus, the defendants' argument is on this point is without merit.

### III.    ALLEGATIONS IN THE COMPLAINT

As noted above, the Nation objected to "the portions of the R&R declining to accept as true all of the well pleaded factual allegations (and favorable inferences therefrom) on a motion to dismiss."  Docket Item 32 at 7.  More specifically, Judge Scott found that the complaint "contains numerous legal conclusions couched as factual assertions."  Docket Item 29 at 3.  He gave the following examples:

> • "the Nation purported to convey a permanent easement" ([Docket Item] 1 at 4);
>
> • "The purported easement was never legally valid or effective" (*Id.*);
>
> • "The [s]tate officials who negotiated and obtained the easement did not comply with the statutes or applicable regulations" (*Id.* at 5);
>
> • "On October 5, 1954, the Nation signed a purported easement agreement" (*Id.* at 9);
>
> • "At the time of the Nation's purported consent to the easement" [sic] (*Id.*);
>
> • "Since at least 1993, the Nation has openly denied any validity for the purported easement, which was void *ab initio* under federal law" (*Id.* at 10); and
>
> • "Defendants Cuomo, Schneiderman, and Karas have authority separately and collectively to obtain valid easements for the State and have failed to obtain any valid easement for the portion of the Nation's Reservation where the Thruway is located."  (*Id.*)

Docket Item 29 at 3.

Judge Scott is correct that, standing alone, phrases such as "purported easement" are not credited on a motion to dismiss.  *See Harris v. Mills*, 572 F.3d 66, 72

(2d Cir. 2009) (explaining that "although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" (quoting *Iqbal*, 556 U.S. at 678)).  But those allegations do not stand alone here:  they are supported by facts—which must be credited—about the procedural missteps the State took in securing the easement.  For example, the complaint alleges that "a map of the definite location of the easement, an application, and information regarding agreements for compensation to individual landowners" were required by New York State law and never provided.  Docket Item 1 at 7.

It is not improper to include legal conclusions in a complaint.  Indeed, complaints typically contain the legal conclusions that the plaintiffs anticipate they will be able to prove.  The issue arises when there are no specific facts pleaded to support those legal conclusions.  That is not the case here.  Thus, this Court respectfully declines to adopt the R&R's conclusion that the Nation's "assertion[s] about 'purported' easements or about the validity of the Thruway Easement . . . require[ ] no deference under Rule 12."  *See* Docket Item 29 at 3.

## IV.   COLLATERAL ESTOPPEL

The main legal issue addressed by the R&R is whether, due to the 1993 lawsuit, collateral estoppel prevents the Nation from raising its claims in the current action.

Collateral estoppel—sometimes called issue preclusion—"applies when (1) the identical issue was raised in a previous proceeding; (2) the issue was *actually litigated and decided* in the previous proceeding; (3) the party had a full and fair opportunity to

litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 400 (2d Cir. 2011) (emphasis added) (quoting *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 918 (2d Cir. 2010)).  The separate doctrine of res judicata—or claim preclusion—"holds that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Bank of N.Y.*, 607 F.3d at 918 (2d Cir. 2010) (quoting *Monahan v. N.Y. City Dep't of Corr.,* 214 F.3d 275, 284 (2d Cir. 2000)).

The R&R found that the Second Circuit definitively resolved the following four points:

> 1)  The Thruway Easement exists, and the documentation establishing it appears to be at least facially valid.  The Court infers that the Second Circuit would not have wasted its time discerning ownership of the easement if the related documentation did not have the necessary signatures and at least appear to be in order.
>
> 2)  The State of New York owns the Thruway Easement.
>
> 3)  Any attack on the validity of the Thruway Easement is an attack on its owner's rights, meaning that the State of New York must have an opportunity to appear and to defend its rights.
>
> 4)  Since the United States either has not been asked to intervene or has declined to intervene on behalf of the Nation, the State of New York cannot appear here because of sovereign immunity.

Docket Item 29 at 15-16.  Based on those four points, Judge Scott determined that collateral estoppel "prevent[s] this case from going any further" because "[t]he Seneca Nation litigated these points in the 1993 Case and lost." *Id.* at 16.

9

As an initial matter, this Court respectfully disagrees with Judge Scott's inference that "the Second Circuit would not have wasted its time discerning ownership of the easement if the related documentation did not have the necessary signatures and at least appear to be in order." *Id.* at 15. That a document "appear[s] to be in order" is not a definitive conclusion as to its validity. And more importantly, the validity of the easement was not contested in the 1993 appeal; the only live issues before the Second Circuit were whether the State or the Thruway Authority owned the easement and whether the State was an indispensable party. Indeed, the Second Circuit explicitly stated that it did not reach whether "the transaction . . . violate[d] the Non-Intercourse Act." *Seneca Nation*, 383 F.3d at 47 n.2. Put another way, the Second Circuit decided only that the State had an interest in defending the easement, not that the easement was valid.

The issues raised in the current litigation are different than those decided by Judge Arcara and the Second Circuit in the 1993 suit. The current issues are (1) whether the Nation's claims against state officials may proceed under *Ex parte Young*; (2) and, if so, whether the easement was validly obtained. Those specific issues were not decided in the 1993 case. As explained above, the only issues decided by Judge Arcara and the Second Circuit were that (1) the State—not the Thruway Authority— owns the easement; and (2) the State was an indispensable party that was immune to suit and the Nation's claims therefore could not proceed against the State, the Thruway Authority, and the Thruway Authority's executive director.

As the Nation observes, there were no state-official defendants in the 1993 case with respect to the easement.[3]  Consequently, Judge Arcara and the Second Circuit did not consider whether the joinder of the state officials who are defendants in this suit could cure the Rule 19 defect.  *See Seneca Nation*, 383 F.3d at 47-49 (affirming district court's holding that "the action could not proceed against *the Thruway Authority and its executive director* in the State's absence" (emphasis added)); *see also* Fed. R. Civ. P. 19(b) ("If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed *among the existing parties* or should be dismissed." (emphasis added)).  Indeed, the defendants concede that the Nation "may be correct that a Rule 19 failure to join an indispensable, immune party can be cured by suing state officials in their official capacity for prospective injunctive relief."  Docket Item 36 at 6; *cf. Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1180-81 (9th Cir. 2012) (allowing suit to proceed against Navajo officials without the tribe as a defendant because "there is no indication that the tribe would offer any necessary element to the action that the Navajo official defendants would neglect," and distinguishing *Dawavendewa v. Salt River Project*, 276 F.3d 1150 (9th Cir. 2002) "because there—unlike here—the tribal officials were *not* parties to the action and thus could not represent the absent tribe's interests" (emphasis in original)).[4]

---

[3]  As noted above, state officials were sued, but only in connection with the claim concerning ownership of certain land, including Grand Island.  *See supra* note 2.

[4]  That being said, if information gleaned from discovery demonstrates that the state-official defendants cannot adequately represent the State's interests, the defendants would not be precluded from moving for dismissal under Rule 19 at summary judgment—as they did in the 1993 suit.  *See* Fed. R. Civ. P. 19(a) (explaining that whether a party is indispensable hinges on, among other things, whether "that

It is true, as the defendants argue, that the Nation *could have* raised its current theory in the prior lawsuit.  As explained above, however, that standard applies only to res judicata, not collateral estoppel.  *See Bank of N.Y.*, 607 F.3d at 918.  Res judicata does not apply here because—as the defendants themselves concede—dismissal under Rule 19 is not a final judgment on the merits.  *See* Docket Item 23 at 4 (acknowledging that that a Rule 19 "dismissal is without prejudice" and "the plaintiff may bring a new action if it cures the earlier infirmity"); *see also* Fed. R. Civ. P. 41(b) ("Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—*except* one for lack of jurisdiction, improper venue, or *failure to join a party under Rule 19*—operates as an adjudication on the merits." (emphasis added)); *Univ. of Pittsburgh v. Varian Med. Sys., Inc.*, 569 F.3d 1328, 1332 (Fed. Cir. 2009) ("[I]t is clear that a dismissal for failure to join a party [under Rule 19] is not an adjudication on the merits, and thus, should not have preclusive effect—i.e. such a dismissal should be without prejudice.").

Finally, the defendants assert that under the Nation's theory, it "could continue to sue, and lose, and bring yet more cases, every time a new theory of liability is thought of."  Docket Item 36 at 7.  But that is not true.  Once there has been a final judgment on the merits, res judicata prevents a party from raising new theories of liability that could

---

person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest"); Fed. R. Civ. P. 19(b) (factors in determining whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed" include "the extent to which a judgment rendered in the person's absence might prejudice that person" and "whether a judgment rendered in the person's absence would be adequate").

have been raised in the prior suit.  Here, however, there has not been a final judgment on the merits—as the defendants themselves admit.

For all those reasons, this Court finds that collateral estoppel does not bar the Nation's suit.

## V.   *EX PARTE YOUNG*

Because Judge Scott found that collateral estoppel required dismissal, he did not address whether the action is barred by the Eleventh Amendment or whether the *Ex parte Young* exception applies.

Under the *Ex parte Young* doctrine, the Eleventh Amendment does "not bar actions seeking only prospective injunctive relief against state officials to prevent a continuing violation of federal law because a state does not have the power to shield its officials by granting them 'immunity from responsibility to the supreme authority of the United States.'"  *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371-372 (2d Cir. 2005) (quoting *Ex parte Young*, 209 U.S. at 160).  The doctrine "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes."  *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (quoting *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 114 n.25 (1984)).  "The doctrine is limited to that precise situation, and does not apply 'when the state is the real, substantial party in interest.'"  *Id.* (internal quotation marks omitted) (quoting *Pennhurst,* 465 U.S. at 101).  Thus, when the "judgment sought would expend itself on the public treasury or domain, or interfere with public

administration," the doctrine does not apply.  *Id.* (quoting *Pennhurst,* 465 U.S. at 101 n.11).

The question is therefore whether the relief that the Nation seeks is the type of relief permitted under *Ex parte Young*.

### A.   *Papasan v. Allain*

Both parties rely on the Supreme Court's decision in *Papasan v. Allain*, 478 U.S. 265 (1986).  There, school children and local officials sued the State of Mississippi, arguing that they were "being unlawfully denied the economic benefits of public school lands granted by the United States to the State of Mississippi well over 100 years ago." *Id.* at 267-68.  The case involved two claims:

> (1) that the sale of [certain] school lands and the unwise investment of the proceeds had abrogated the State's trust obligation to hold those lands for the benefit of [Mississippi] schoolchildren in perpetuity and (2) that the disparity deprived those schoolchildren of a minimally adequate level of education and of the equal protection of the laws.

*Id.* at 266.  The Court found that the first claim was barred by the Eleventh Amendment. The Court explained:

> Petitioners' trust claims are barred by the Eleventh Amendment, even if petitioners' characterization of the legal wrong as being a breach of a continuing obligation to comply with the trust obligations is accepted.  There is no substantive difference between a not-yet-extinguished liability for a past breach of trust and the continuing obligation to meet trust responsibilities asserted by petitioners.  *Edelman v. Jordan,* 415 U.S. 651 [(1974)].  In both cases, the trustee is required, because of the past loss of the trust corpus, to use its own resources to take the place of the corpus or the lost income from the corpus.

*Papasan*, 478 U.S. at 265.

The Court found, however, that the equal protection claim could proceed against the State, explaining that "[t]he alleged ongoing constitutional violation—the State's unequal distribution of the benefits of school lands—is precisely the type of continuing violation for which a remedy may permissibly be fashioned under *Ex parte Young.*"  *Id.* at 266.  In contrast to the trust claim, which really was seeking compensation for a past loss, "[t]he essence of the equal protection claim [was] the present disparity in the distribution of the benefits of state-held assets and not the State's past actions."  *Id.*

The lesson of *Papasan* is that "[r]elief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even . . . [if] styled as something else."  *Id.* at 278.  "On the other hand, relief that serves directly to bring an end to a *present violation* of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury."  *Id.* (emphasis added).

The defendants argue that, like the relief sought in *Papasan*'s trust claim, the relief the Nation seeks "is more akin to damages for a past wrong."  Docket Item 23 at 8. In their view, "[e]ssentially, what the [Nation] is seeking here is for the Court to order Defendants to renegotiate the terms of an easement entered into sixty-four years ago that they view as monetarily inequitable as an award, in continuing income rather than a lump sum, to compensate for an accrued monetary liability."  *Id.*  Put another way, the defendants argue that any wrong occurred when the easement was unlawfully formed; there is no ongoing wrong, they urge.

The Nation responds that this case is more akin to the equal protection claim in *Papasan*:  the use of the void easement is an *ongoing* violation of federal law, it argues,

and it seeks only injunctive relief to remedy that violation going forward.  *See* Docket Item 32 at 24-28.  The Nation does not, for example, seek any compensation for the use of the easement from 1954 until now.

Although a close question, this Court agrees with the Nation that its suit may proceed under *Ex parte Young*.  Taking the allegations of the complaint as true—as this Court must—there is an ongoing violation of federal law:  the State is using and earning income from an invalid easement.  Although it is true that the alleged wrong occurred initially when the easement was formed, the Nation adequately alleges ongoing wrongs—that is, the unsanctioned use of its lands.

That is different than the trust income claim in *Papasan* where the harm—wrongful sales and bad investments—had occurred in the past, and where the relief sought—"continuing payment of the income from the lost corpus"—was "essentially equivalent in economic terms to a one-time restoration of the lost corpus itself." *Papasan*, 478 U.S. at 281.  Put another way, the relief requested was "in substance the award, as continuing income rather than as a lump sum, of 'an *accrued* monetary liability.'"  *Id.* (emphasis in original) (quoting *Milliken v. Bradley*, 433 U.S. 267, 289 (1977)).

Here, by contrast, the Nation alleges real *ongoing* harm:  every day cars are driving on the easement and paying tolls to the State without just compensation to the Nation.  What is more, the Nation is not seeking compensation for "an *accrued* monetary liability"; it seeks compensation only for the use of the easement *going forward*.

16

To be sure, the defendants may have valid factual defenses to the Nation's claim. As the defendants suggest, the claim seems to be a case of buyer's remorse—unhappiness with a deal that was negotiated and accepted many years ago as a result of what has occurred since. But that is not a viable argument on a motion to dismiss. At this early stage of the litigation, the Nation's claim may proceed under *Ex parte Young*.

### B. *Idaho v. Coeur d'Alene Tribe of Idaho*

The parties also dispute whether the exception to the *Ex parte Young* doctrine established by the Supreme Court in *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997), applies here. In *Coeur d'Alene*, a tribe sought to establish sovereignty over, and exclusive rights to, certain submerged lands that had been claimed and governed by Idaho for centuries. The Court concluded that "[i]t is apparent, then, that if the Tribe were to prevail, Idaho's sovereign interest in its lands and waters would be affected in a degree fully as intrusive as almost any conceivable retroactive levy upon funds in its Treasury." *Id.* at 287. Accordingly, "[u]nder these particular and special circumstances, [the Court found] the *Young* exception inapplicable." *Id.* The question is thus whether those same "particular and special circumstances" apply here.

The Nation notes that "[t]he Second Circuit has recognized the narrow scope of *Coeur d'Alene* and has applied it only once, when it 'directly control[led]' on 'virtually identical' facts." Docket Item 32 at 29 (quoting *W. Mohegan Tribe & Nation v. Orange Cty.*, 395 F.3d 18, 23 & n.4 (2d Cir. 2004)). In *Western Mohegan*, a tribe sought "a declaration of [their] ownership and right to possess their reservation lands in the State of New York, which lands are subject to restrictions against alienation under federal law"

and "relief restoring to them the possession of their lands."  395 F.3d at 20.  The

Second Circuit explained:

> It is clear from the Tribe's assertions in the complaint and on
> appeal, and from our prior statements regarding Indian title,
> that the Tribe's claim is fundamentally inconsistent with the
> State of New York's exercise of fee title over the contested
> areas.  To the extent that the complaint alleges that there
> has never been a lawful extinguishment of the Tribe's Indian
> title, it seeks a declaration from this court that New York's
> exercise of fee title remains "subject to" the Tribe's rights,
> *i.e.,* a "determination that the lands in question are not even
> within the regulatory jurisdiction of the State."  *Coeur
> d'Alene,* 521 U.S. at 282, 117 S.Ct. 2028.  Thus, the relief
> requested by the Tribe is, as much as that sought in *Coeur
> d'Alene,* the functional equivalent of quiet[ing] the Tribe's
> claim to title in the New York counties named in the
> complaint.

*W. Mohegan*, 395 F.3d at 23.

The court also noted that "[a]pparently significant to the Court's reasoning [in

*Coeur d'Alene*] was the fact that the Coeur d'Alene Tribe's claims implicated the

authority of the State of Idaho over submerged lands."  *Id.* at 22 n.3.  And "[a]lthough

the complaint [in *Western Mohegan* was] not specific in this regard, [the court took]

judicial notice of the fact that the state parks listed as comprising portions of the Tribe's

land claim contain[ed] 'submerged lands.'"  *Id.*

Based on all that, the Nation argues that the *Coeur d'Alene* exception applies

only when a case involves "(1) a dispute over submerged lands; (2) threatened

divestiture of land title (not mere possession); and (3) threatened divestiture of

jurisdiction and sovereignty."  Docket Item 32 at 29.  The applicability of *Coeur d'Alene*

presents another close question.  But ultimately, this Court agrees with the Nation that

*Coeur d'Alene* carved out a very narrow exception on the particular facts of that case—
an exception not applicable here.

Here, in contrast to *Coeur d'Alene*, the land at issue is *owned by the Nation*, not
the State.  The only property right at issue for the State is the *use* of those lands under
the easement.  *Cf. W. Mohegan*, 395 F.3d at 22 (explaining that the tribe sought "the
right 'to *exclude all others,* including holders of fee simple title, through state law
possessory actions such as ejectment and trespass'" (emphasis in original)).  What is
more, the Nation does not seek to *divest* the State of a property right.  Put another way,
if the Nation prevails, the State will not be forced to remove the portion of the Thruway
that runs over the easement; it will be required to bring its ownership of the easement
into compliance with federal law, or alternatively, it will be prohibited from collecting tolls
for the portion of the Thruway that runs over the easement until it obtains a valid
easement.

In sum, the property rights at issue in *Coeur d'Alene* and *Western Mohegan* were
far more expansive than the Thruway easement at issue here.  *See In re Deposit Ins.
Agency*, 482 F.3d 612, 620 (2d Cir. 2007) ("More was at stake [in *Coeur d'Alene*] than
simple possession or other incidents of ownership.  The Indian tribe sought relief that
'would bar the State's principal officers from exercising their governmental powers and
authority over the disputed lands and waters,' extinguishing state regulatory control over
a 'vast reach of lands and waters long deemed by the State to be an integral part of its
territory.'" (quoting *Coeur d'Alene*, 521 U.S. at 282)); *W. Mohegan*, 395 F.3d at 20 ("The
lands claimed by the Tribe include areas currently being used as state parks, state
wildlife management areas, state-managed lakes and wetlands, state historic sites, and

Empire State Plaza—where the state capitol is located.").  And as the Second Circuit has noted, the *Coeur d'Alene* Court emphasized the importance of sovereignty over submerged lands, *see W. Mohegan*, 395 F.3d at 22 n.3, which are not at issue in this case.

Instead, this case is more akin to *Seneca Nation of Indians v. New York*, 397 F. Supp. 685 (W.D.N.Y. 1975).  There, the State filed maps "describing land within the Allegany Reservation of the [Nation,] which the State wished to appropriate in connection with the construction of a highway."  *Id.* at 685.  "The State claim[ed] that the filing vested title in the State . . . and extinguished [the Nation]'s right to the unrestricted use and occupancy of these lands."  *Id.*  The Nation sued the State, the Department of Transportation, and the Commissioner of Transportation, arguing that "because of treaties between the . . . Nation and the United States, the State is barred from appropriating reservation land."  *Id.*

The court rejected the defendants' claim that they were protected by sovereign immunity.  *Id.* at 686.  Relying on *Ex parte Young*, the court found that "[b]ecause this suit alleges that a state official has exceeded the authority conferred upon him, it is not prohibited."  *Id.; see also id.* (explaining that "an Indian Tribe is not prohibited by the eleventh amendment from suing to enjoin the actions of a state official which conflict with treaty rights" (citing *Great Lakes Inter-Tribal Council, Inc. v. Voight*, 309 F.Supp. 60 (W.D. Wis. 1970)).  The court thus concluded that the State was not authorized "to appropriate land belonging to the [Nation]" under applicable state and federal law.  *Id.* at 687.

The Second Circuit similarly has held that a suit involving state property could proceed against New York State's Superintendent of Banks under *Ex parte Young*. *In re Deposit*, 482 F.3d at 618-20.  There, the petitioner claimed "that the Superintendent [wa]s committing an ongoing violation of federal law by taking possession of and retaining assets that, under [federal law] must be released to the [petitioner]." *Id.* at 618.  The Second Circuit rejected the argument that the petitioner's suit could not proceed because it was the equivalent of a "quiet title" action against the State. *Id.* at 619-20.  The court acknowledged that "strong arguments that the Eleventh Amendment precludes a quiet title suit in federal court against a state, absent state consent, based on the fact that such an action would adjudicate the state's beneficial ownership of property, regardless of whether it is nominally asserted against a state official." *Id.* at 619.  But, the court reasoned, "arguments of this nature have never prevented a federal court from providing relief from governmental officials taking illegal possession of property in violation of federal law." *Id.*

Along the same lines, the Fifth Circuit found no exception to the *Ex parte Young* doctrine where "[t]itle to the properties at issue rest[ed] with [the plaintiff], not the State," and instead, "[t]he issue [wa]s whether the State may constitutionally impose an easement, or an encumbrance, on [the plaintiff's] fee simple estate." *Severance v. Patterson*, 566 F.3d 490, 495 (5th Cir. 2009).  The court explained that unlike the claim in *Coeur d'Alene*, the plaintiff's "suit [wa]s not the functional equivalent of a quiet-title action." *Id.*

The defendants argue that *Seneca Nation*, *In re Deposit*, and *Severance* do not apply because "[i]n each of those three cases, the plaintiff alleged that an officer of the

state acting in their [sic] official capacity had illegally obtained title to property by acting unilaterally and without legal authority to do so." Docket Item 44 at 5. Here, the defendants posit, "there is no claim that the State acted without legal authority in obtaining title to the Thruway easement." *Id.* But that is *precisely* what the Nation claims: that the State is using and profiting from the easement without the legal authority to do so.

Thus, this Court finds that the *Coeur d'Alene* exception to the *Ex parte Young* doctrine does not apply here.

## VI. LACHES

The defendants argue that the complaint should be dismissed because the Nation waited more than sixty years to commence this suit. Docket Item 16-1 at 16-20.[5] The defendants "acknowledge that laches is an affirmative defense, which ordinarily cannot be the basis for a [m]otion to [d]ismiss." *Id.* at 17. They contend, however, that "a motion to dismiss based on an affirmative defense can be granted 'where the affirmative defense appears on the face of the complaint, and there is no dispute that the [p]laintiff's action is barred by the defense.'" *Id.* (quoting *Beaulieu v. Vermont*, No. 2:10-CV-00032, 2010 WL 3632460, at *3 (D. Vt. Aug. 5, 2010)).

Laches "requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *New Jersey v. New York*, 523 U.S. 767, 806 (1998) (quoting *Kansas v. Colorado*, 514 U.S. 673, 687 (1995)). The defendants may well have a valid laches defense in this case. But it is not

---

[5] Because Judge Scott found that collateral estoppel applied, he did not reach this issue.

plain *from the complaint* that laches applies.  It is not clear, for example, what the prejudice is to the defendants or whether there was actual lack of diligence during all those years on the part of the Nation.  Thus, just as it is too soon to weigh in on the merits of this lawsuit, *see supra,* so it is premature to decide whether laches applies.

## VII.   INTERLOCUTORY APPEAL

This case involves difficult and weighty issues.  As the defendants observe, the *Ex parte Young* case law "is less than crystal clear"; the waters of *Coeur D'Alene* are equally "murk[y]."  *See* Docket Item 44 at 4; *see also Papasan,* 478 U.S. at 278 (explaining that "[f]or Eleventh Amendment purposes, the line between permitted and prohibited suits will often be indistinct").

Because this decision and order "involves . . . controlling question[s] of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from [this decision and] order may materially advance the ultimate termination of the litigation," the defendants may apply to the Second Circuit for interlocutory appeal.  *See* 28 U.S.C. § 1292(b).[6]  This Court further orders that if the defendants do so, this matter

---

[6]  Section 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.  The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order:  Provided, however, [t]hat application for an appeal hereunder shall not stay

shall be stayed until their application is denied or—if it is accepted—until the appeal is resolved.

### CONCLUSION

For the reasons stated above, the defendants' motion to dismiss, Docket Item 16, is DENIED.  The defendants may apply to the Second Circuit for interlocutory appeal under 28 U.S.C. § 1292(b) **within ten days of the date of this decision and order**.  If the defendants do so, this matter shall be stayed until their application is denied or—if it is accepted—until the appeal is resolved.  If the defendants do not apply for interlocutory appeal within ten days of the date of this decision and order, the case is referred back to Judge Scott for further proceedings consistent with the referral order of June 14, 2018, Docket Item 17.

SO ORDERED.

Dated:      September 3, 2020
            Buffalo, New York

_____
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

---

proceedings in the district court unless the district judge or
the Court of Appeals or a judge thereof shall so order.