UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SENECA NATION, a federally recognized Indian tribe,

Plaintiff,

vs.

KATHLEEN C. HOCHUL, in her official capacity as Governor of New York; LETITIA JAMES, in her official capacity as New York State Attorney General; MARIE T. DOMINGUEZ, in her official capacity as Commissioner of the New York State Department of Transportation; THOMAS P. DINAPOLI, in his official capacity as Comptroller of the State of New York; and THE NEW YORK STATE THRUWAY AUTHORITY.

Defendants.

Case No. 18-cv-00429-LJV

---

## <u>DECLARATION OF DAVID MALONE IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

David Malone, pursuant to 28 U.S.C. § 1746 hereby declares as follows:

1.      I am the Chief Financial Officer for the New York State Thruway Authority ("the Thruway Authority") and submit this Declaration in Support of Defendants' Motion for Summary Judgment.

2.      I have held this position since July 2023.  Prior to this position, I served as the Thruway Authority's Director of Accounting & Disbursements from 2007 until taking the position as Chief Financial Officer.

3.      In my capacity as Chief Financial Officer, I oversee the Department of Finance and Accounts with responsibility for the Thruway Authority's budget and long-range financial

1

plan, financial administration, debt management and investments. The Office of Accounting and Disbursements is within the Thruway Authority's Department of Finance and Accounts.

4. In my previous capacity as the Director of Accounting & Disbursements, I oversaw the Office of Accounting and Disbursements, which includes accounts payable, payroll, general accounting, systems administration, and projects and cost accounting. The office is responsible for the Thruway Authority's accounting and financial reporting, fixed asset recognition, payroll processing, and payment to vendors.

5. On May 20, 2024, I was deposed in this case by counsel for the Seneca Nation and was designated as one of the Thruway Authority's Rule 30(b)(6) witnesses.

6. In conjunction with this case, I reviewed Thruway Authority public records to identify the costs incurred to (a) construct the New York State Thruway ("the Thruway") in the 1950s and (b) operate and maintain the Thruway since it opened to the public.

7. These records include but are not limited to the Thruway Authority's Annual Reports and Audited Financial Statements from 1950 to 2023.

8. Audited Financial Statements from 2013 to 2023 are currently on the Thruway Authority's website at: https://www.thruway.ny.gov/about/financial/statements/index.html

9. Additionally, Thruway Authority Monthly Financial Reports, which include the Thruway Authority's revenue and expenses and other financial information present in the Audited Financial Statements, were produced in this case.

10. I oversaw the collection of the cost information in the Thruway Authority's records and the review of such records to determine the construction costs and the operation/maintenance costs attributable to the 2.7 mile stretch of the Thruway that traverses the Seneca Nation's Cattaraugus Reservation (the "Seneca Section").

11. The Seneca Section is not a designated section or zone of the Thruway relevant to Thruway operations or finances; instead, it is a term created for this case in order to define that portion of the Thruway that traverses Seneca Nation land pursuant to the permanent easement conveyed by the Seneca Nation to the State of New York in October 1954.

12. The Seneca Section is part of the larger "Erie Section" of the Thruway, the latter of which is 70 miles in length and runs between Buffalo, New York (Exit 55) and the Pennsylvania State Line (Exit 61 in Ripley, New York).

13. Unlike the Seneca Section, the Erie Section is a term used by the Thruway Authority for operational and financial purposes.

14. Accordingly, Thruway Authority records do not directly specify construction or maintenance costs for the Seneca Section of the Thruway. Instead, those costs attributable to constructing and maintaining the Seneca Section were determined by reviewing publicly available information about the Thruway and its operations.

15. Before discussing those construction and maintenance costs, I provide some brief background information on the Thruway below.

**Background on the New York State Thruway**

16. In 1944, Governor Thomas E. Dewey authorized the New York Department of Public Works to proceed with construction of the Thruway.

17. In 1950, New York State created the Thruway Authority, a public corporation, to finance, construct, reconstruct, improve, develop, maintain, and operate the Thruway.

18. The first section of the Thruway, between Utica and Rochester, opened on June 24, 1954, while the remainder of the "mainline" opened in 1955. The Erie Section opened in 1957. By December 23, 1960, all 559 miles of the original Thruway were open.

3

19.     The Thruway's 426-mile "mainline" and 70-mile Erie Section make up a toll road that runs from the New York City line at Yonkers, New York to the Pennsylvania state line at Ripley, New York. The portion that runs north-south between Albany, New York and the New York City line at Yonkers is part of Interstate 87. The portion that runs east-west between Albany, New York and the Pennsylvania State Line at Ripley, New York is part of Interstate 90.

20.     Today, the Thruway is 570 miles in length and is one of the largest tolled highway systems in the United States.

21.     The Thruway is a critical component of the National Interstate Highway System and plays a significant role in New York's transportation system connecting New York City, Albany, Utica, Syracuse, Rochester and Buffalo.

**Seneca Section Construction Costs**

22.     According to the 1957 Annual Report of the Thruway Authority, "[t]he Erie Section was built at a cost of $63,967,818, or an average of $916,444 per mile." Attached hereto as **Exhibit A** is a true and correct copy of the Thruway Authority's 1957 Annual Report (*see* p. 39 for Erie Section construction costs).

23.     As noted above, the Thruway Authority did not separately identify construction costs for the Seneca Section as that term is only relevant to this litigation.

24.     Accordingly, using the figures from the Thruway Authority's 1957 Annual Report, I multiplied the average per mile construction cost for the Erie Section ($916,444) – of which the Seneca Section is a part – by 2.7 miles (the length of the Seneca Section).

25.     This calculation resulted in a figure of $2,474,398.80, which represents the construction costs attributable to the Seneca Section (in 1950s dollars).

**Seneca Section Operation/Maintenance Costs**

26. To determine operation and maintenance costs for the Seneca Section, I reviewed the Thruway Authority's Monthly Financial Reports, Annual Reports and Audited Financial Statements from 1950 to 2023.

27. This information is summarized in a chart which sets forth, among other items, the Thruway Authority's annual expenses attributable to operating and maintaining the Seneca Section. Attached hereto as **Exhibit B** is a true and correct copy of this chart.

28. Before setting forth these expenses, I again note that the 2.7 mile Seneca Section cannot be divorced or disaggregated operationally from the rest of the Erie Section and the entirety of the Thruway itself.

29. From 1957 to 2023, the total cost incurred by the Thruway Authority attributable to operating and maintaining the Seneca Section is $55,088,328 (*see* Exhibit B).

30. Annual expenses attributable to operating and maintaining the Seneca Section include, but are not limited to, expenses related to salaries, employee benefits, maintenance and repairs, and utilities.

31. This total cost was determined by adding the annual costs to operate and maintain the Seneca Section (Column M) from 1957 to 2023.

32. To determine the annual cost of operating and maintaining the Seneca Section, I identified the Thruway Authority's annual expenses (set forth in Column H) and divided each year's amount by the Thruway's miles in operation (set forth in Column I).

33. The Thruway's miles in operation changed occasionally, ranging from 506 to 641 miles, and is currently set at 570 miles.

5

34. This calculation resulted in the average cost per mile to maintain the Thruway for that applicable year (Column J).

35. Thereafter, I multiplied the average cost per mile to maintain the Thruway by 2.7, the mile length of the Seneca Section, to ascertain the annual cost attributable to operating and maintaining the Seneca Section (Attributed Expenses - Column L).

36. Finally, I note that there are additional columns on the chart with the following headings: Annual Operating Expenses (Column B); Capital Improvements Set-aside (Provisions) (Column C); Interest (Column D); Other Authority Projects (Column E); Depreciation Amortization (Column F); and Postemployment Obligations (Column G).

37. The purpose of these additional categories of information is described below:

    a. Annual Operating Expenses Per Financial Statements (Column B): This amount is the Thruway Authority's total operating expenses for the year identified on the chart. It is different from "Net Thruway Authority Expenses" (Column H) because the former figure accounts for expense reductions associated with Capital Improvements Set-aside (Provisions) (Column C); Interest (Column D); Other Authority Projects (Column E); Depreciation Amortization (Column F); and Postemployment Obligations (Column G).

    b. Capital Improvements Set-aside (Provisions) (Column C): In the years 1957 through 1991, "provisions" were included as part of the Thruway Authority's Annual Operating Expenses. Provisions are cash transfers made within the Thruway Authority for capital improvements. These expenses have been excluded from the Attributed Expenses calculation

because the expenses recorded are not true operating costs nor are they costs related to maintaining the roadway system on an annual basis. Rather, they are cash set-asides for future capital improvements.

c. <u>Interest (Column D)</u>:  In the years 1988 through 1991, an interest expense was included as part of the Thruway Authority's Annual Operating Expenses.  These expenses have been excluded from the Attributed Expenses calculation because the remaining years, and current accounting standards do not consider interest expense to be an operating expense. Although not accounted for in the Attributed Expenses, the Thruway Authority has incurred interest costs associated with the issuance of Thruway Authority bonds for financing improvements for the Erie Section and Seneca Section.

d. <u>Other Authority Projects (Column E)</u>:  In the years 1996 through 2016, operating expenses related to the New York State Canal Corporation and/or Interstate 84 were included as part of the Thruway Authority's Annual Operating Expenses.  For some of these years they were listed as Other Authority Projects on the Thruway Authority's Statements of Revenues, Expenses, and Changes in Net Assets whereas in other years they were shown separately on this statement.  For presentation purposes, the totals have been aggregated together in Column E.  These expenses have been excluded from the Attributed Expenses calculation because both the New York State Canal Corporation and Interstate 84 were known costs unrelated to the 2.7 mile Seneca Section.

e. <u>Depreciation Amortization (Column F)</u>: In the years 2002 through 2023, depreciation and amortization expenses were included as part of the Thruway Authority's Annual Operating Expenses. These expenses have been excluded from the Attributed Expenses calculation because the remaining years did not include depreciation and amortization expense as part of Annual Operating Expenses in accordance with GASB pronouncements. Further, depreciation expense is not a day to day cost to operate and maintain the highway that is funded for current resources.

f. <u>Postemployment Obligations (Column G)</u>: New Governmental Accounting Standards Board pronouncements ("the applicable GASB") were implemented beginning in 2007 (and further amended in future years) related to Postemployment Benefits. Postemployment Benefits consists primarily of pension and retiree health insurance costs. Certain costs associated with these obligations that are required to be reported as expenses to comply with GASB pronouncements even though they are not funded from current resources have been excluded from the Attributed Expenses. Although these unfunded costs are considered expenses based on generally accepted accounting principles, I have taken a conservative approach by including in Attributed Expenses only the costs funded from current resources to provide these benefits in the applicable years.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 7, 2025
Albany, New York

David Malone
New York State Thruway Authority - CFO

8