# EXHIBIT F

**RICHARD GOBEILLE**


UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

------------------------------------------
SENECA NATION, a federally recognized
Indian tribe,

      Plaintiff,

    - vs -  Case No.
        18-cv-00429-LJV

KATHLEEN C. HOCHUL, in her official
 capacity as Governor of New York;
LETITIA JAMES, in her official capacity
 as New York State Attorney General;
MARIA T. DOMINGUEZ, in her official
 capacity as Commissioner of the New York
 State Department of Transportation;
THOMAS P. DINAPOLI, in his official
 capacity as Comptroller of the
 State of New York; and
THE NEW YORK STATE THRUWAY AUTHORITY,

      Defendants.
------------------------------------------


    Examination before trial of **RICHARD
GOBEILLE**, taken pursuant to the Federal Rules of
Civil Procedure, in the law offices of NIXON
PEABODY LLP, Key Towers at Fountain Plaza, 40
Fountain Plaza, Suite 500, Buffalo, New York, on
September 12, 2024, commencing at 10:01 a.m.,
before ANDREA J. DEMYAN, Notary Public.


*JACK W. HUNT & ASSOCIATES, INC.*

APPEARANCES:     AKIN GUMP STRAUSS HAUER & FELD LLP,
                 By MERRILL C. GODFREY, ESQ.,
                 mgodfrey@akingump.com, and
                 BRETTE A. PEÑA, ESQ.,
                 bpena@akingump.com,
                 Robert S. Strauss Tower,
                 2001 K Street, N.W.,
                 Washington, DC  20006,
                 (202) 887-4000,
                 Appearing for the Plaintiff.

                 LETITIA A. JAMES, ESQ.,
                 Attorney General of
                 the State of New York,
                 By STEPHANIE JOY CALHOUN, ESQ.,
                 Assistant Attorney General,
                 Main Place Tower,
                 350 Main Street, Suite 300A,
                 Buffalo, New York  14202-3750,
                 (716) 853-8400,
                 stephanie.calhoun@ag.ny.gov,
                 Appearing for the Defendants,
                 Kathleen C. Hochul, in her
                 official capacity as
                 Governor of New York;
                 Letitia James, in her official
                 capacity as New York State
                 Attorney General; and Maria T.
                 Dominguez, in her official
                 capacity as Commissioner of
                 the New York State Department
                 of Transportation.

                 NIXON PEABODY LLP,
                 By ERIK A. GOERGEN, ESQ.,
                 Key Towers at Fountain Plaza,
                 40 Fountain Plaza, Suite 500,
                 Buffalo, New York  14202-2223,
                 (716) 853-8100,
                 egoergen@nixonpeabody.com,
                 Appearing for the Defendant,
                 The New York State
                 Thruway Authority.

PRESENT:             STEVEN TURNER
                     KARLA KAWENNIIOSTHA GENERAL,
                     Seneca Nation Associate Counsel

existing route?

A.   Right.  For time savings, correct.  So we did not -- I'm going to point out we did not adjust the toll rate, all right, for that case because we treated it as the existing thruway and we just basically stretched the rubber band.  We made no new interchanges or anything like that.

Q.   Understood.  And so you estimated -- and this is on page 13 of your report -- you estimated that the annual toll revenue loss to the thruway authority if it were operating this alternative route instead of the current route would be $11.3 million?

A.   Yes.

Q.   And that's due to the fact that if there is a longer route around the Seneca Nation's territory, many people would choose not to pay that toll and therefore the -- the toll revenues would go down?

A.   Yes, that they would choose the shorter route along Route 20.

Q.   So the thruway currently collects higher tolls for the current route then it would be

the Pennsylvania state line, right?

**A.** Yes.

**Q.** And you estimated that the toll revenue for that section for 2024 would increase from $61 million in 2023, to 75 million in 2024, right?

**A.** Yes.

**Q.** And underneath the table in the second sentence, you say, there are nearly 30,000 average daily vehicles on the segment.

Do you see that sentence?

**A.** Yes.

**Q.** And the segment that you're talking about is the segment of the thruway between exits 57A and 58 that cross -- that crosses the Seneca Nation's lands, right?

**A.** Yes.

**Q.** So on average, 30,000 vehicles per day cross the Seneca Nation's lands over the thruway, right?

**A.** Yes, today.

**Q.** And then on the next page at the very top, you -- in the first full sentence you say, it should be noted that approximately 26 percent of

**Q.** And you state -- and you state here that the Erie section of the thruway and I-90 is clearly a major truck route, right?

**A.** Yes.

**Q.** And the 27 -- 26 percent figure is an accurate figure as of today, right?

**A.** Yes.

**Q.** And back on page 3 of your report, in -- in the bullet that appears just above the heading traffic diversion impacts, that last sentence in the bullet you say, rerouting a portion of the thruway as a less direct route will make it less attractive to drivers prompting some to divert to other roadways causing a reduction in toll revenue. That's a correct statement?

**A.** That's a correct statement.

**Q.** And in general, that's why in planning a toll road, such as the engineering firm did in the feasibility study that we were looking at earlier, there's an incentive to use the most direct routes that are available, right?

**A.** In planning a toll road?

**Q.** Right.

**A.** Yes.

**Q.** And that reflects what we were discussing earlier --

**A.** Right.

**Q.** -- that appears in your report in the text of the report that if -- if there were a longer -- if there were a longer route around the Cattaraugus territory and if the point to point total charge for cars remained constant, that the loss in volume of traffic would result in a loss of 11.3 million dollars per year?

**A.** Yes.

**Q.** And then three lines below that, you also have an added expense item for the longer route where you estimate an additional $9,885,600 in annual operating expenses because of the additional lane miles for the longer route, right?

**A.** Yes.

**Q.** And so putting those two items together on an annual basis, operating the longer route, again, putting aside capital costs, but just operating that longer route with a less revenue and greater costs, the thruway would be more than

$21 million to the worse per year, right?

A.    Operating a longer route with no change in toll rate for that section would result in that.

Q.    It would result in a -- more than a $21 million hit to the -- the thruway's finances, right?

A.    Yes.  It would result in $11 million less of income and 9.8 million more in operating expenses.

MR. GODFREY:  Okay.  Is this a good time for a lunch break?

MR. GOERGEN:  Sure.

MR. GODFREY:  Okay.  Why don't we go off the record.

(A recess was then taken at 12:25 p.m.)

BY MR. GODFREY:

Q.    I'm going to ask you to turn back to Exhibit 3 which is your rebuttal report.

A.    Okay.

Q.    And on page 1 of your rebuttal report in the last sentence of the first paragraph you say, even with the difference in assignments, Mr. Turner and I chose fairly similar alternative

Q. -- and you want to compare that to what an alternative route would look like that was longer and went around the Seneca Nation's territory, you would have to factor in that fewer people will want to pay the toll to go on a less direct route so you're going to choose the more direct route if you want to optimize income, right?

A. I will answer that question yes. All right? But it's also a factor of how much longer is the route.

Q. And the -- and the longer the alternative route is, the less likely people are going to want to pay a toll to take a less direct route?

A. The longer the alternative route is, that is true.

Q. Okay.

A. But longer is in terms of travel time, it is not in terms of distance.

Q. Okay. In your two reports in this case, you have not offered an opinion on what the value to the thruway is of its ongoing use of the Seneca Nation's lands, correct?

**A.** Correct.

**Q.** On page 12 of your report --

**A.** Report?

**Q.** In your rebuttal report, I'm sorry -- you have a footnote 15. Could you read that into the record and then tell me what you mean by this footnote?

**A.** Turner report page 87, that one?

**Q.** Mm-hmm.

**A.** I think I'm referring to where the information came from.

**Q.** I mean the -- the statement below that.

**A.** Oh.

**Q.** Where it says I had similarly applied.

**A.** Okay. I had -- so this is Mr. Turner speaking, right? I had similarly applied the current interchange to interchange toll rates --

**Q.** I don't think this is Mr. Turner. Do you want to check that? I think this is your -- this is your statement.

**A.** Okay. Oh, all right. I got you.

**Q.** Am I correct?

**A.** I had similarly applied the current