UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SENECA NATION, a federally recognized Indian
tribe,

                              Plaintiff,

          vs.                                              Case No. 18-cv-00429-LJV-MJR

KATHLEEN C. HOCHUL, in her official capacity
as Governor of New York; LETITIA JAMES, in
her official capacity as New York State Attorney
General; MARIE T. DOMINGUEZ, in her official
capacity as Commissioner of the New York State
Department of Transportation; THOMAS P.
DINAPOLI, in his official capacity as Comptroller
of the State of New York; and THE NEW YORK
STATE THRUWAY AUTHORITY.

                              Defendants.

# DEFENDANTS' REPLY IN FURTHER SUPPORT OF OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATION

**NIXON PEABODY LLP**
Erik A. Goergen
40 Fountain Plaza, Suite 500
Buffalo, New York 14202
Telephone: (716) 853-8118

*Attorneys for Defendant New York State*
*Thruway Authority*

**LETITIA JAMES**
**Attorney General of the State of New York**
Daniel R. Maguire
Stephanie Joy Calhoun
Main Place Tower, Suite 300A
350 Main Street
Buffalo, New York 14202
Telephone: (716) 853-8400

*Attorneys for Defendants Governor of the State*
*of New York, Attorney General of the State of*
*New York, the Commissioner of the New York*
*State Department of Transportation, and the*
*Comptroller of the State of New York*

# TABLE OF CONTENTS

**Page**

ARGUMENT ...................................................................................................................... 1

POINT I  *SHERRILL* AND ITS SECOND CIRCUIT PROGENY BAR THE NATION'S
CLAIMS ................................................................................................................ 1

    A.  Sherrill Applies to the 1954 Easement.................................................................... 1

    B.  The Nation's Claims are Disruptive and Upset Justified Expectations .................. 3

POINT II  THE MAGISTRATE JUDGE ERRED IN CONCLUDING THAT THE STATE
OFFICIAL DEFENDANTS WERE PROPER DEFENDANTS UNDER EX
PARTE YOUNG ................................................................................................... 4

    A.  Neither the Second Circuit or This Court Has Determined Whether the State
Official Defendants are Proper Defendants under Ex parte Young ........................ 4

    B.  The State Official Defendants Lack a Sufficient Connection to the Alleged
Statutory Violation ................................................................................................. 6

POINT III  THE MAGISTRATE JUDGE ERRED IN CONCLUDING THAT THE 1954
EASEMENT WAS VOID AT INCEPTION ........................................................... 8

    A.  Federal Consent Was Not Required for the 1954 Easement.................................... 8

    B.  The Secretary of the Interior's 1946 Letter Approved the Thruway Project ........ 10

POINT IV  THIS COURT SHOULD NOT GRANT THE NATION INJUNCTIVE
RELIEF ............................................................................................................... 10

CONCLUSION................................................................................................................ 10

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*United States v. Boylan*,
   265 F. 165 (2d Cir. 1920).................................................................................................1

*Cayuga Indian Nation of New York v. Pataki*,
   413 F.3d 266 (2d Cir. 2005)..........................................................................................3, 4

*City of Sherrill v. Oneida Indian Nation*,
   544 U.S. 197 (2005)...............................................................................................1, 2, 3, 4

*CSX Transp., Inc. v. N.Y. State Office of Real Property Services*,
   306 F.3d 87 (2d Cir. 2002)................................................................................................7

*Mulgrew v. U.S. Dep't of Transp.*,
   750 F. Supp. 3d 171 (S.D.N.Y. 2024).............................................................................6, 7

*Nassau & Suffolk Cnty. Taxi Owners Ass'n, Inc. v. State*,
   336 F. Supp. 3d 50 (E.D.N.Y. 2018) .................................................................................5

*Oneida Indian Nation v. County of Oneida*,
   617 F.3d 114 (2d Cir. 2010)...........................................................................................3, 4

*Pension Ben. Guar. Corp. v. LTV Corp.*,
   496 U.S. 633 (1990)..........................................................................................................8

*Seneca Nation v. Hochul*,
   58 F.4th 664 (2d Cir. 2023) .....................................................................................2, 6, 7

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*,
   576 U.S. 519 (2015)..........................................................................................................8

*Walsh v. McGee*,
   918 F. Supp. 107 (S.D.N.Y. 1996) ....................................................................................5

**Statutes**

25 U.S.C. § 311..................................................................................................................10

1950 Seneca Leasing Act..................................................................................................8, 9

18 Stat. 330 .........................................................................................................................9

64 Stat. 442 .........................................................................................................................9

**Other Authorities**

Jon. W. Bruce, et al., *The Law of Easements & Licenses in Land* § 1:20 (2024)............................9

## ARGUMENT

## POINT I

## *SHERRILL* AND ITS SECOND CIRCUIT PROGENY BAR THE NATION'S CLAIMS

### A. *Sherrill* **Applies to the 1954 Easement**

According to the Nation, the laches equitable defense from *City of Sherrill v. Oneida Indian Nation*, 544 U.S. 197 (2005) is inapplicable because the Nation purportedly never lost "actual possession" of the land occupied by the New York State Thruway. *See* Plaintiff Seneca Nation's Response to Defendants' Objections (ECF No. 140) ("Resp.") 11-15. *Sherrill* and its Second Circuit progeny do not *require* the loss of actual possession of land for laches to apply to long-delayed Indian land claims. *See* Defendants' Objections (ECF No. 137) ("Objs.") 1-2. The Nation's argument conflicts with *Sherrill's* reasoning and the Second Circuit's application of *Sherrill* laches as a comprehensive equitable defense governing possessory and non-possessory Indian land claims. *See* Objs. 1-2, 11-13.

Contrary to the Nation's argument, the Second Circuit's 1920 decision in *United States v. Boylan*, 265 F. 165 (2d Cir. 1920), cited in a footnote in *Sherrill*, does not demonstrate that dispossession is a prerequisite to the invocation of *Sherrill* laches. Resp. 11-12. *Boylan* involved conveyances by individual Oneida Indians of reservation land (where Oneidas continuously lived) to non-Indians. The *Sherrill* Court noted that in *Boylan* the Oneidas were "actually in possession" of the land in question and "occupied the land continuously for over a century." 544 U.S. at 210 n.3. Unlike in *Boylan*, the Nation here is not "actually in possession" of the disputed land occupied by the Thruway given its inability to use or exercise control over it. Regardless, in *Sherrill*, the Oneidas *did* possess the land in question since they had reacquired, in fee simple, the parcels that had once belonged to their historic reservation, and the dispute concerned whether this act revived the Oneida Nation's aboriginal title. *Id*. at 211-13. Even

1

though the Oneidas possessed the disputed land in fee simple, the Supreme Court in *Sherrill* nevertheless barred the Oneidas' attempted revival of sovereignty because it was too disruptive. The Nation cannot avoid *Sherrill* laches here by manufacturing a nonexistent "dispossession" requirement.

In any event, the Nation's argument that it is in "actual possession" of the land occupied by the Thruway defies the practical reality that the Nation does not and cannot exercise any of the rights associated with possession. Objs. 3-6. The Nation cannot use the disputed land (other than by driving on the Thruway like any other member of the traveling public), exercise control over the land, exclude others from the land, or dispose of the land. *Id*. Put another way, the Nation's argument that it "possesses" the disputed land is a legal fiction designed to avoid *Sherrill* laches (assuming a dispossession requirement exists). Moreover, this Court should not eliminate the State's possessory interest in the disputed land as it conflicts with the Second Circuit's recognition that the State does have a "possessory" interest granted by the 1954 Easement. *See Seneca Nation v. Hochul*, 58 F.4th 664, 673 (2d Cir. 2023) ("*Seneca II*").

Additionally, the State has not "long acknowledged" the Nation's purported "possessory rights and inherent sovereign authority over the disputed lands." Resp. 13. The Thruway Authority's practice of complying with the Nation's laws in conducting federally mandated bridge inspections merely demonstrates that the Thruway Authority respects the government-to-government relationship with the Nation and that it seeks to avoid unnecessary litigation in exercising the State's rights under the 1954 Easement. It is *not* a concession that Nation approval is *required* for the Thruway Authority to comply with federal law governing bridge inspections nor should it be construed as an admission that the Nation "possesses" the disputed land for purposes of adjudicating the *Sherrill* laches equitable defense.

While the Nation must concede that it "does not regulate traffic" on the Thruway, it argues that it nevertheless "retains regulatory authority over the land over which the Thruway passes." Resp. 13. Other than the claimed requirement to comply with Nation laws during bridge inspections (addressed above), the Nation fails to identify what "regulatory authority" it exercises over the disputed land. And for good reason – it has none. *See* Objs. 6 (outlining a sampling of powers that the State/Thruway Authority exercises over the disputed land). Nor does the Nation's claimed retention of "partial use of lands . . . crossed by a bridge or underpass" (Resp. 13) demonstrate that the Nation possesses the land occupied by the Thruway. *See* Objs. 4-5. And, contrary to the Nation's contention, "actual possession" should be evaluated based on the land in dispute, not "whether Indians still reside *in the area*." Resp. 13 (emphasis added).

### B. The Nation's Claims are Disruptive and Upset Justified Expectations

The Nation's narrow view of "disruption" (Resp. 16-19) conflicts with *Sherrill* and well-established Second Circuit precedent. *See* Objs. 9-14; Def. Mem. 19-24; Def. Opp. Mem. 4-7; Def. Reply Mem. 1-5; Def. Supp. Mem. 1-7. According to the Nation, "disruption" is limited to "ejecting putative owners, changing regulatory authority, altering sovereign jurisdiction, and the like." Resp. 17. Not true. Noticeably absent from the Nation's self-created definition of disruption is a recognition of the Second Circuit's holdings in *Cayuga* and *Oneida* that all remedies are barred for both possessory and non-possessory land claims, including claims for money damages. *See Cayuga Indian Nation of New York v. Pataki*, 413 F.3d 266, 275-77 (2d Cir. 2005) (holding that *Sherrill's* equitable principles barred *all* remedies, including money damages, flowing from the Cayuga Nation's land claims because they were inherently disruptive); *Oneida Indian Nation v. County of Oneida*, 617 F.3d 114, 136 (2d Cir. 2010) (dismissing possessory and nonpossessory land claims seeking money damages on *Sherrill* laches grounds).

The Nation's demand for "equitable compensation" or "fair value" (Resp. 17) for a new easement that the State would be *compelled to purchase* is practically indistinguishable from a prohibited monetary judgment under *Cayuga* and *Oneida*. Objs. 10-12. Any differences between a compulsory, court-ordered future payment (sought by the Nation here) and a money damages judgment (rejected in *Cayuga* and *Oneida*) only compound the disruptiveness of the Nation's claims. Mandatory future payments by the State are *even more* disruptive than a one-time payment of a money damages judgment for past harm held to be disruptive in *Cayuga* and *Oneida*. The Nation's requested monetary remedy of a compelled new easement negotiation whereby the State and/or Thruway Authority *must pay* the Nation a substantial sum *in perpetuity* (or for however long the Thruway operates) conflicts with binding Second Circuit precedent and is therefore "subject to dismissal" since such relief possesses all the same disruptive attributes of a barred monetary judgment. *Cayuga*, 413 F.3d at 277-78; *Oneida*, 617 F.3d at 135. The Nation has no response to this argument. Nor does the Nation address the highly disruptive outcome of rerouting *if* court-ordered easement negotiations are unsuccessful and the parties cannot reach a new agreement. Closure of the Thruway's Erie Section is not an option and the Court lacks the authority to compel the State/Thruway Authority to execute a contract on terms unilaterally chosen by the Nation.

**POINT II**

**THE MAGISTRATE JUDGE ERRED IN CONCLUDING THAT THE STATE OFFICIAL DEFENDANTS WERE PROPER DEFENDANTS UNDER EX PARTE YOUNG**

A. <u>**Neither the Second Circuit nor This Court Has Determined Whether the State Official Defendants are Proper Defendants under Ex parte Young**</u>

"It is important to note that law of the case rules come into play only with respect to issues previously determined, and that questions that have not been decided do not become law

of the case merely because they could have been decided." *Walsh v. McGee*, 918 F. Supp. 107, 111 (S.D.N.Y. 1996) (citations omitted). Here, it is not law of the case that the State Official Defendants have a sufficient connection to the alleged continuing violation of federal law to make them proper parties under *Ex parte Young*. Despite multiple opportunities to do so, the Nation has not identified any language from this Court or the Second Circuit where this issue was explicitly determined. Instead, the Nation argues that the conclusion that the State Official Defendants are proper parties under *Ex parte Young* was "necessarily implicit" in the Second Circuit's decision. Resp. 19. However, whether the Nation pled a viable *Ex parte Young* claim by (1) alleging an ongoing violation of federal law and (2) seeking relief properly characterized as prospective raises issues entirely separate from the question of whether the named State Official Defendants had a sufficient personal connection to the purported ongoing violation of federal law. *See Nassau & Suffolk Cnty. Taxi Owners Ass'n, Inc. v. State,* 336 F. Supp. 3d 50, 67-68 (E.D.N.Y. 2018).

The Nation further argues that the Second Circuit concluded the State Official Defendants were proper parties under *Ex parte Young* when it rejected the argument that this case was a quiet title case. Resp. 19-20. The conclusion that the State Official Defendants are proper parties, however, was not necessarily implicit in the Second Circuit's rejection of the quiet title argument. At the Second Circuit, the State Defendants argued that this suit was the functional equivalent of a quiet title action because it challenged the validity of the State's permanent easement and implicated the State's sovereign and regulatory interest over the disputed land. The Second Circuit rejected this argument explaining that: "This case is not the functional equivalent of a quiet title action. Here, the Nation holds fee title to the land in question, and New York State's only interest is a possessory one granted by the permanent

5

easement." *Seneca II*, 58 F.4th at 664. This conclusion does not depend on a finding that the State Official Defendants are proper parties under *Ex parte Young*; as such, it was not necessarily implicit in the Second Circuit's rejection of the quiet title argument.

This is not changed by the State Defendants stating in a few select sentences of their Second Circuit reply brief that the Nation failed to identify how the State Official Defendants are involved in the operation of the Thruway. *See* Resp. 19-20. These statements were made in support of the State Defendants' quiet title argument. Reply Brief for Defendants-Appellants at 5-6 (2d Cir. 2021) (ECF No. 71). They were not made to support a separate argument that the State Official Defendants must be dismissed because they lacked a sufficient connection to the alleged statutory violation. Indeed, the State Official Defendants could not have made such an argument on appeal because it was not made before the District Court.

**B. <u>The State Official Defendants Lack a Sufficient Connection to the Alleged Statutory Violation</u>**

The Nation correctly recognizes that a proper *Ex parte Young* defendant must have "*some* connection with the enforcement of the act [or policy] that is in continued violation of federal law," but wrongly argues that the authority to remedy the alleged violation alone is a sufficient connection. Resp. 21. The cases relied upon by the Nation do not support its argument. In *Mulgrew v. U.S. Dep't of Transp.*, 750 F. Supp. 3d 171 (S.D.N.Y. 2024), for example, the Southern District held that the Chief Engineer for the New York State Department of Transportation was a proper *Ex parte Young* defendant because his "permission is essential for Congestion Pricing" and Congestion Pricing could not be implemented without the Chief Engineer's approval. 750 F. Supp. 3d at 203. In that case, the Chief Engineer's permission or approval of Congestion Pricing was the alleged statutory violation. Thus, the Chief Engineer was a proper *Ex parte Young* defendant because the Court by enjoining the Chief Engineer from

approving Congestion Pricing could prevent a federal violation from occurring.  Similarly, in

*CSX Transp., Inc. v. N.Y. State Office of Real Property Services*, 306 F.3d 87 (2d Cir. 2002), the

Second Circuit held that although the defendants did not impose the challenged taxes, they

"possesse[d] both the power and duty under New York law to control assessment of the railroad

taxes for local districts."  306 F.3d at 99.

Unlike in *Mulgrew* and *CSX Transp.*, the State Official Defendants have no alleged

involvement in the operation of the Thruway across the Nation's reservation.[1]  An injunction

prohibiting the State Official Defendants from continuing to operate the Thruway across the

Nation's reservation would be an entirely hollow victory because the State Official Defendants

do not operate or control the Thruway—the Thruway Authority does.  Recognizing this, the

Nation cleverly attempts to reframe the alleged statutory violation.  To the Nation, the statutory

violation is not the Thruway's continued operation across the Nation's reservation without a

valid easement, but the failure to obtain a valid easement itself.  Resp. 21 ("By refusing to obtain

a valid easement, the officials are 'engaged in ongoing actions that violate federal law.'").  In

*Seneca II*, however, the Second Circuit recognized that the ongoing violation was the continued

impairment of "the Nation's free use and enjoyment of its protected land . . . by the presence of

an unlawful easement."  58 F.4th at 671.  The State Official Defendants simply play no role in

the Thruway Authority's alleged ongoing impairment of the Nation's rights.

---

[1] To further illustrate the difference between this case and *Mulgrew* and *CSX Transp.* it is helpful to consider scenarios where the NYSDOT Commissioner would be a proper *Ex parte Young* defendant.  For example, the State Defendants acknowledge that the NYSDOT Commissioner would be a proper party if the Nation was seeking an injunction to *prohibit* the NYSDOT Commissioner from exercising his authority to acquire land necessary for operation of the Thruway across the Nation's reservation.

**THE MAGISTRATE JUDGE ERRED IN CONCLUDING THAT THE 1954 EASEMENT WAS VOID AT INCEPTION**

### A. Federal Consent Was Not Required for the 1954 Easement

The Magistrate Judge and Nation err in relying on the 1961 amendment to determine the scope of the Nation's leasing authority under the 1950 Seneca Leasing Act in *1954 when the Nation granted New York the 1954 Easement*. The Nation claims that "when Congress enacts an amendment to prior law, its interpretation of the text of that prior law and its determination of a need for further legislation is entitled to presumptive weight." Resp. 7. This is true when a court is tasked with interpreting the scope of a law *after* it has been amended. For example, in the case relied upon by the Nation, *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015), the Supreme Court considered whether disparate-impact claims *were presently* cognizable under the Fair Housing Act. There, the Supreme Court concluded that 1988 amendments to the FHA signaled that Congress ratified such liability.

This Court's task is markedly different from the Supreme Court's in *Inclusive Communities Project*. This Court's job is not to decide the Nation's leasing authority *after* the 1961 amendment, but to determine the Nation's leasing authority *before* the 1961 amendment. In this context, the 1961 amendment and its legislative history are a "hazardous basis" for determining that authority in 1954. *See Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990).

Without the benefit of the 1961 amendment and accompanying legislative history, the evidence clearly supports a broad interpretation of the Nation's leasing authority under the 1950 Seneca Leasing Act that includes the authority to convey the 1954 Easement. Throughout their briefing, the State Defendants have argued that the 1875 Act using the term "lease" authorized

the Nation to grant rights-of-way and easements to railroads by granting the Nation the authority to "lease lands within said [territories] for railroad-purposes." 18 Stat. 330; *see also* Def. Mem. 33; Def. Reply Mem. 8-9. The record includes various rights-of-way and easements that the Nation entered with railroads pursuant to its leasing authority under the 1875 Act. ECF Nos. 115-18; 116-4; 116-5; 116-6. Despite the extensive briefing on summary judgment, the Nation never disputed that the 1875 Act authorized the Nation to grant rights-of-ways and easement to railroads through the Act's use of the term "lease." *See* Pl. Opp. Mem. 16-17.

The 1950 Seneca Leasing Act *expanded* the Nation's leasing authority under the 1875 Act. *See* 64 Stat. 442, § 5. Relevant here, the 1950 Act removed the limitation restricting the Nation's authority to "lease" land outside the villages only for railroad purposes. By removing that limitation, Congress authorized the Nation to grant the same property rights it had been giving to railroad companies for railroad purposes to other entities for non-railway purposes, including the authority to grant New York State the property rights conveyed in the 1954 Easement.[2] This broad interpretation of the 1950 Act is consistent with the underlying purpose of the 1950 Act—to remove federal supervision over the Nation's affairs—and was endorsed by the Nation in 1960. *See* Def. Mem. 36-37.[3]

---

[2] The Nation wrongly claims that the State Defendants forfeited their argument that the 1954 Easement is a "lease" by raising it for the first time in a summary judgment reply brief. Resp. 8. In their opening summary judgment memorandum of law, the State Defendants carefully avoided characterizing the 1954 Easement as either a lease, easement, or right-of-way because the line between easements and leases is not always easily drawn. *See* Jon. W. Bruce, et al., *The Law of Easements & Licenses in Land* § 1:20 (2024). Instead, the State Defendants argued, without explicitly characterizing the 1954 Easement, that the 1950 Act authorized the Nation to convey the types of property rights included in the 1954 Easement without federal approval. Def. Mem. 33-39. The State Defendants' argument that the 1954 Easement can be characterized as a "lease" authorized by the 1950 Act was simply a further development of this original argument and was properly made in the State Defendants' reply memorandum of law in response to an argument made by the Nation.

[3] To avoid repetition, the State Defendants are not replying to the Nation's arguments concerning whether (1) the 1875 Act authorized the Nation to convey the 1954 Easement to New York or (2) the Nation ratified the 1954 Easement through its post-1961 conduct. These arguments have been fully developed in earlier briefs.

**B. The Secretary of the Interior's 1946 Letter Approved the Thruway Project**

The State Defendants argue that the Acting Secretary of Interior approved the Thruway project by a 1946 letter to the Director of the New York State Department of Public Works. Objs. 21-22. In response, the Nation claims "it is approval of the 1954 *easement* that is relevant here, not of the 'project' as it stood in 1946." Resp. 10. The 1901 Highway Act and Right-of-Way Act, however, do not contemplate approval of a specific easement across an Indian reservation. Instead, it requires approval for "the opening and establishment of public highways." 25 U.S.C. § 311. The 1946 letter provided such approval.

## POINT IV

**THIS COURT SHOULD NOT GRANT THE NATION INJUNCTIVE RELIEF**

Contrary to the Nation's assertion (Resp. 24-25) the Magistrate Judge *did not* recommend granting their request for injunctive relief—nor did he recommend granting the State Defendants' request to dismiss the Nation's injunctive relief claim. Instead, the Magistrate Judge recommended granting the Nation summary judgment on its declaratory judgment claim and requiring "the parties return to mediation in order to negotiate the terms of a new easement." R&R 33. Indeed, the Magistrate Judge expressly declined to address the Nation's request that the Court rule on a payment amount for the new easement: "[f]urthermore, although the Nation seeks a ruling on payment for the easement, the Court's recommendation herein is limited to directing defendants to negotiate with the Nation to obtain a new easement." R&R 11.

## CONCLUSION

For the foregoing reasons, this Court should decline to adopt the Magistrate Judge's Report and Recommendation, grant the State Defendants' Motion for Summary Judgment, and deny the Nation's Motion for Summary Judgment in its entirety.

Dated: December 19, 2025
Buffalo, New York

**NIXON PEABODY LLP**

BY: /s/ *Erik A. Goergen*
Erik A. Goergen
40 Fountain Plaza, Suite 500
Buffalo, New York 14202
Telephone: (716) 853-8118
egoergen@nixonpeabody.com

*Attorneys for Defendant New York State Thruway Authority*

**LETITIA JAMES**
**Attorney General of the State of New York**

BY: /s/ *Daniel R. Maguire*
Daniel R. Maguire
Stephanie Joy Calhoun
Assistant Attorney General, of Counsel
Main Place Tower, Suite 300A
350 Main Street
Buffalo, New York 14202
Telephone: (716) 853-8400
Daniel.Maguire@ag.ny.gov
Stephanie.Calhoun@ag.ny.gov

*Attorneys for Defendants Governor of the State of New York, Attorney General of the State of New York, the Commissioner of the New York State Department of Transportation, and the Comptroller of the State of New York*

**<u>CERTIFICATION</u>**

Pursuant to Local Rule 72(c) for the U.S. District Court for the Western District of New York, I hereby certify that Defendants' Reply in Further Support of Objections to the Magistrate Judge's Report and Recommendation does not raise new legal/factual arguments.

Dated:  December 19, 2025                      /s/ *Erik A. Goergen*
       Buffalo, New York                   Erik A. Goergen

                                      /s/ *Daniel R. Maguire*
                                        Daniel R. Maguire